DREHER & BUMB, Respondents, *vs.* ÆTNA INSURANCE COMPANY, Appellant.

1. Where one of the conditions in a policy of fire insurance upon the goods of two partners was, that "any transfer or change of title in the property insured" should avoid the policy, *it was held,* that a dissolution of partnership before loss, and a division of the goods, so that each partner owned distinct portions, was a change of title within the meaning of the condition.

*Appeal from St. Louis Court of Common Pleas.*

*Britton A. Hill,* for appellant. The court erred in refusing to declare that, if the plaintiffs had separated their goods before the fire, and had dissolved partnership, they could not recover. *Murdock & Garrett* v. *The Chenango County Mutual Ins. Co.,* 2 Comstock's Rep. 210. *Howard & Rykman* v. *Albany Ins. Co.,* 3 Denio, 303. The instructions of the court do not cover the case under the condition. A dissolution of partnership and a division of the goods was not a

Dreher & Bumb *v.* Ætna Insurance Co.

technical *sale*, but it was a *change of title* within the meaning of the policy.

*Geyer & Dayton*, for respondent. A dissolution of partnership could create no change in the title to the goods; nor could a mere separation of the goods. The first instruction given by the court presented the real question in the case properly to the jury. *McMasters* v. *The Western Insurance Co.*, 25 Wend. 379. *Jillon* v. *The Kingston Insurance Co.*, 7 Barbour, 570.

RYLAND, Judge, delivered the opinion of the court.

On the 28th of September, 1849, the plaintiffs, as partners, under the style of "Dreher & Bumb," procured insurance in the Ætna Insurance company for three thousand dollars, for twelve months, on their stock of ready-made clothing, in a store on the east side of Broadway, second door north of Cherry street, St. Louis, Missouri. On the 10th day of January, 1850, said store and contents were consumed by fire. The policy, among other conditions, was subject to the following:

4th Condition. "Policies of insurance, subscribed by this company, shall not be assignable without the consent of the company, expressed by indorsement made thereon : in case of assignment, without such consent, whether of the whole policy or of any interest in it, the liability of the company, in virtue of such policy, shall thenceforth cease; *and in case of any transfer or change of title* in the property insured by this company, such *insurance shall be void and cease.*"

The eighth condition of the policy required, among other things, "that all persons insured by this company, and sustaining loss or damage by fire, are forthwith to give notice thereof to the agent of the company, and as soon after as possible, to deliver in a particular account of such loss or damage, signed with their own hands, and verified by their oath or affirmation;" and "shall also, if required, submit to an examin-

ation, under oath, by the agent or attorney of the company, and answer all questions touching his, her or their knowledge of any thing relating to such loss or damage, or to their claim thereupon, and subscribe such examination, the same being reduced to writing."

Upon the happening of the fire, the plaintiffs made out an account of loss, and annexed their verification to it, claiming to have lost $4,738 08. On the 15th January, 1850, the agent of defendant required plaintiffs to submit to an examination on oath. On the next day, the plaintiffs appeared at the office of the company and submitted to an examination on oath. The examination was made and reduced to writing by the attorney of the defendant. Each plaintiff made a several statement, which was sworn to. The examination of Dreher was a severe and searching one, and is too long for insertion in this opinion. The object of the company seemed to be, to show a dissolution of the partnership and a sale or transfer and division of the goods. Dreher is a German and understands but imperfectly the English language. To the question, "when did your partnership with Bumb end, or is it still existing ?" He answered, "there is no dissolution of the partnership as yet; we intend to dissolve when all the debts are paid." Question : "Did you and Bumb separate your goods and divide them before the fire ?" Answer : "We took stock after Christmas, the day before New Years, and put every thing in books at cost prices." "Did you not take the Broadway store and Bumb the Morgan street store, each upon his own account before the fire ?" Answer : "When every thing was paid off, we were to settle together and dissolve partnership." "Had you not distinctly agreed to pay all the debts of the firm individually ?" Answer : "I had agreed to pay the debts of Dreher & Bumb." To a question about telling certain of their creditors whether he had dissolved partnership with Bumb, he answered, "I told these persons that I had had a settlement with Bumb; that we had taken stock on the 1st of January, 1850; that I had taken the store on Broadway and he had taken the

one on Morgan street, and that I would pay all the debts individually for the firm, and that we would quit partnership when every thing was paid up." "How many dollars worth of goods did Bumb take into the Morgan street store?" Answer: "Between sixteen and eighteen hundred dollars worth." "How many dollars worth did you take into the Broadway store?" Answer: "About four thousand nine hundred dollars worth." "Who got the profits on the goods in the Broadway store after the 1st of January, 1850, and up to the fire?" Answer: "I got the profits in the Broadway store and Bumb got the profits in the Morgan street store after the 1st of January, 1850." "Had you any connection with Bumb or any thing to do with the partnership after the 1st of January, 1850, except to pay off the debts of the firm, which you were individually bound to pay?" Answer: "I had nothing to do with the partnership, after that time, except to pay the debts outstanding against the firm. Bumb and myself, each traded after the 1st of January, 1850, for ourselves, on our own account, individually, and each one received the profits in his own store for himself." "Did you have any thing to do with Bumb, as a partner, in the store on Broadway, after the 1st of January, 1850?" Answer: "No, not as partner; he had nothing to do with the buying or selling of goods in the Broadway store. My clerk's name was Gustav Oertel."

Martin Bumb said, in his statement, "that Dreher & Bumb took stock before New Years, and we said if every thing is paid off, then every one goes for himself. On 1st of January, 1850, Dreher bought of Dreher & Bumb all the goods in the Broadway store, and had to pay all the debts. I bought the goods in the *Broadway store* of Dreher & Bumb, and had them for myself alone. (He obviously means the *Morgan street store*, as he had just said that Dreher had bought the Broadway store.) I got the profits in my store on Morgan street for myself and Mr. Dreher the profits in the Broadway store for himself. Said, if Dreher paid the debts of the Broadway store, he had lost nothing by the fire."

There was much testimony given which it is not necessary to notice. The instructions given, and those that were asked and not given, form the grounds upon which the appellant seeks to have the judgment below reversed.

The defendant asked the following instructions, which the court refused to give :

1. If the jury believe from the evidence, that the plaintiffs, Dreher & Bumb, had separated their goods and had dissolved partnership, prior to the time of the fire, they will find for the defendant.

2. The declaration of Dreher, that he had dissolved partnership with Bumb, is competent evidence to prove a dissolution of the copartnership between Dreher & Bumb. Either member of a copartnership can dissolve the partnership, at any time, by his own individual act or declaration, without any notice of such dissolution, in the newspapers.

3. If the jury believe from the evidence, that Dreher & Bumb had separated their goods before the fire ; that Bumb had taken the Morgan street store and Dreher had taken the Broadway store, and that Bumb had no joint interest with Dreher in the goods in the Broadway store, at the time of the fire, then the jury will find for the defendant.

4. If the jury believe from the evidence, that Dreher & Bumb, or either of them, were guilty of false swearing, within the meaning of the eighth condition of the policy, as to any matter or statement specified in the answer as false swearing, then the jury will find for the defendant.

5. If the jury believe from the evidence, that the plaintiffs, or either of them, lit or kindled, or prepared and exposed combustible matter or liquid to any fire heat, so as to cause to be lit or kindled the fire which destroyed said property insured, then the jury will find for the defendant.

6. If the plaintiffs were in partnership at the time the goods were insured, and were not in partnership at the time of the fire, then the plaintiff cannot recover in this action.

7. If the jury believe from the evidence, that the plaintiff,

Bumb, was not entitled to receive any profits in the Broadway store, nor responsible for any of the losses in the said store, after the 1st of January, 1850 ; and if the jury further believe from the evidence, that Dreher was individually entitled to the profits of the goods in the Broadway store, and that the plaintiffs had separated their goods on or before the first of January, 1850, the plaintiffs were not jointly interested in the said goods, as partners, at the time of the fire ; and if the plaintiffs were partners at the time of the insurance, and were not partners at the time of the fire, then there was a change of title in the said goods, and the plaintiffs are not entitled to recover.

8. If the jury believe from the evidence, that there has been any transfer or change of title in the property insured, after the effecting insurance and before the fire, then the jury will find for the defendant.

9. The plaintiffs were required by the conditions of insurance, to submit to an examination on oath, if required ; and if the jury believe from the evidence, that the plaintiffs were required to submit to such examination, upon oath ; that they did submit to such examination ; that it was reduced to writing and subscribed and sworn to by the plaintiffs, and was furnished by them or was delivered by them to the defendant, as such examination on oath, then the jury is instructed that the plaintiffs cannot deny the truth of the matters stated by them in such examination.

The following instructions, asked by defendant, the court gave :

1. If the jury believe from the evidence, that, prior to the fire, Bumb had sold out to Dreher all his (Bumb's) interest in the stock of goods in the Broadway store, and that, at the time of said fire, Bumb had no interest in said stock of goods, they will find for the defendant.

2. If the jury believe from the evidence, that Dreher and Bumb, or either of them, swore falsely, with the intent to defraud or mislead the defendant, as to any material fact, or

that both, or either of them, intentionally, for the purpose of misleading or defrauding the defendant, omitted to state any material fact, within their or his knowledge, then they will find for the defendant. Mistakes, if not intentional or designed to mislead or defraud the defendant, are not material, and do not make out the charge of false swearing.

3. If the jury are satisfied from the evidence, that the plaintiffs, or either of them, lit or kindled, or caused to be lit or kindled, or prepared and exposed combustible matter to any fire heat, with the intent or design to cause to be lit or kindled the fire which destroyed the property in question, then they will find for the defendant.

1. The important question before the jury was, in relation to the change of title in the property insured. The efforts on the part of the defendant below, the appellant here, were, to bring the transactions of the plaintiffs within the fourth condition of the policy, to show that there had been " a transfer or change of title in the property insured." Most of the instructions asked by the defendant have reference to this point ; indeed, all the defendant's counsel contends for, as error, mainly re- lates to the fourth condition of this policy. The law is well settled, that the assured must have an interest at the time of the loss, as well as when the contract was made, and if he has parted with all his interest, he cannot recover. 3 Kent, 371. 3 Denio, 303. The instructions of the defendant were design- ed to call the attention of the jury to the separation and divi- sion of the goods between the plaintiffs prior to the loss.

The first instruction given by the court, on its own motion, " If the jury believe, from the evidence, that, prior to the fire, Bumb had sold out to Dreher all his (Bumb's) interest in the stock of goods in the Broadway store, and that, at the time of said fire, Bumb had no interest in said stock of goods, they will find for the defendant," does not contain the same points as those asked for and refused by the court on this subject, as fully and distinctly as the defendant had asked. The plaintiffs may not have sold, one to the other, yet there may have been

a separation of the goods—a division of the stock, and a taking of the goods under this division, by each one receiving his allotted share, and thereby completely change the title which they had before jointly in and to the goods, as effectually as a sale would have done, and yet such division and acceptance of the shares by each, are not a sale — not a technical sale. Still, their joint interest has been changed. There may have been a dissolution of the partnership and a division of the partnership property by the partners, so that one of them might not have any interest in the goods lost by fire—have no title to the goods burnt.

This instruction has two clauses ; the first embraces the idea of a sale—if " Bumb had sold out all his interest to Dreher," &c. ; and the second one, " If he had no interest at the time of the fire." These are so united by the phraseology as to depend upon each other — the not having interest to depend upon the previous sale. So that the latter cannot help out the instruction.

In the opinion of this court, this instruction does not embrace the law of the case under the fourth condition of this policy. The title which these plaintiffs, as partners at the time of making the insurance, had in the goods insured, might have passed out of one partner into the other, and still there may have been no sale. A dissolution of the partnership and division of the partnership property among the partners—the one receiving a larger portion, and being under obligation to pay the debts ; the other, a less quantity, and not to pay debts, may change the ownership or title to the property, so that, under this fourth condition, there cannot be a recovery in the partnership name, nor on the policy at all. In *Murdock & Garratt* v. *Chenango County Mutual Insurance Co.*, 2 Comstock, 210, it was held, that, where two tenants in common were insured against loss by fire, and after the insurance, but before the loss, one of them conveyed all his interest in the premises to the other, they could not maintain a joint action upon the policy.

Cady, Justice, in his opinion in this case, said, "If one of two owners of a mill, who are jointly insured, sell his part to a stranger, it may appear like a hardship that such sale should destroy the policy, but it is no more than happens in all cases in which there are joint promisees, covenantees or obligees, and one of them discharges the promise, covenant or bond."

The court below should, then, have given to the jury an instruction, leaving to them the fact of a transfer or change of the ownership of the property, from the evidence. This transfer did not necessarily require a sale from one to the other of these plaintiffs. It is on this ground alone that the case is reversed. Had the first instruction given, properly embraced fully the principles of those refused on that subject, as asked by the defendant, this judgment would have been affirmed.

The court should have instructed the jury that a dissolution of a copartnership and a division of its goods, so that the parties are to hold their shares separately and distinctly, is not strictly a sale of the goods, yet it operates a change of title in the goods, and for not giving such an instruction, this court reverses the judgment of the court below and remands the case. The other judges concur herein.