Moncure P.
This is a supersedeas to a judgment of the Circuit court of Rockingham county, rendered on *856 the 16th day of September 1874, affirming a judgment of the county court of said county, rendered on the 10th day of June 1873, in an action of assumpsit brought by Felix T. Sheets & Co. against The West Rockingham Mutual Fire. Insurance Company, founded on a policy of insurance whereby the said company insured a certain paper mill, machinery and buildings connected therewith, belonging to the said plaintiffs. The declaration contained but one count, which vras special, though in the general form authorized by the Code, chap. 36, sec. 44. There was a bill of particulars filed with the declaration, charging the defendant as Dr. to the plaintiff, “ 1872, July 17th. To loss by destruction of paper mill and machinery by fire, and of damage of house designated in policy of insurance as Mo. 3, $6,266.”
The defendant demurred to the declaration, and plead non-assumpsit; and the plaintiff joined in the demurrer, and replied generally to the plea. The demurrer being argued was overruled by the court. The defendant then offered to file several pleas, to which the plaintiffs objected; but the court overruled the objection, and permitted the pleas to be filed; to which the plaintiffs replied generally, and thereupon the issues were tried by a jury, which rendered a verdict for the plaintiffs, and assessed their damages at $4,930.44, with interest from the 7th of September 1872 until paid. The defendant moved the court to set aside the verdict and grant a new trial; which motion the court overruled; and judgment was accordingly rendered on the verdict.
Three bills of exception were tendered by the defendant and signed by the court, during the progress of the trial of the case, which will be noticed in detail hereafter. The defendant applied to the judge of the *857 «aid Circuit court for a supersedeas to the said judgment of the County court; which was accordingly •awarded. The Circuit court afterwards heard the case upon the said supersedeas, and affirmed the said judgment of the County court. The defendant then applied to a judge of this court for a supersedeas to the said judgment of the Circuit court; which was accordingly awarded: and that is the case which we now have to dispose of.
Sundry errors in the judgment of the Circuit court, affirming the judgment of the County court, are assigned in the petition to this court for a supersedeas; which errors we will notice in the order of their assignment.
“First—The County court erred in overruling the demurrer to the plaintiff’s declaration. The act of assembly, approved February 8,1872, which simplifies declarations on policies of insurance, and on which the plaintiff relied, requires the plaintiff to file with his declaration the original policy of insurance or a sworn copy thereof; neither of which was done in this case. The declaration therefore was not sufficient under the statute. The declaration should, therefore, •have set forth every condition or promise of said policy, and an averment that the plaintiff had observed the same, seriatim. Code of 1873, chapter 36, sec. 44, page 372. The demurrer therefore should have been sustained.”
It does not appear from the record whether the policy was filed with the declaration or not. It ought regularly perhaps, to have been noticed in the declaration as having been filed therewith. It was in possession of the plaintiffs, and might, easily, have been filed therewith; and the plaintiffs could have had no motive for not filing it. They intended that it should *858 be considered as so filed; for they filed their declaration in the form authorized by law in case the plaintiff files with his declaration or complaint the original P0^0^’ or a sworn copy thereof. If it had not been actually filed, the defendant might have called for it,, an(j compe]je(j its production. It was not so called ^or) either because it was already filed, or because the-plaintiff well knew what it was, without calling-for its. production. It was in the form prescribed by the defendant, and in the same form with the other policies-entered into by the defendants. It was before the defendant when the special pleas were prepared, in which the terms of the policy, or some of them, are- set forth,, and it was the first evidence which was introduced by the plaintiffs on the trial of the issues by the jury. It is too late to object, for the first time, in the appellate court, that the policy was not filed with the declaration. If it was not so filed, and there was a,ny error in that respect, it did not prejudice, and was in effect waived by the defendant.
“2nd. The County court erred in permitting the-private letter of F. T. Sheets to John H. Rolston to go to the jury as proof of notice of the loss. The letter was not addressed to the company, nor to said Rolston in his official capacity as president; nor was it in the form required by the conditions annexed to the policy; and it was not signed by said firm of Felix T. Sheets & Co., and was not intended as a notice of loss. The-4th condition annexed to the policy required the notice to be given forthwith ‘to the company;’ and intended''that the notice should be addressed to the company, and signed by the insured.”
This is the subject of the first of the three bills of exception aforesaid.
The notice given by the letter here referred to was- *859 certainly given in due time. The loss occurred on the 7th of July 1872; the letter bears date two days thereafter, on the 9th of July, and was duly sent by mail, and received by the president of the company, to whom, personally, it was directed. It is very specific in detailing the facts in regard to the fire, and refers, unmistakably, to a loss under the policy of insurance in question. It was clearly intended to be a notice given in pursuance of the policy. After detailing the particulars in regard to the fire, the writer says: “ The old mill is burnt, and it will be necessary to have some commissioners appointed to assess the machinery on hand; though not worth much, yet it should have a value attached; and I am informed that that duty devolves upon you,” &e. “Wishing to comply strictly with the rules and regulations of the company, I shall not attempt to move or change anything until further advised by yourself or the authorities of the company.”
It is objected, that this letter was signed only by F. T. Sheets, one of the firm of F. T. Sheets & Co.; and was addressed only to John H. Rolston (personally), and not as president of the company. But it was intended by the writer, and perfectly understood by all persons concerned, to be a notice under the policy; and the company derived from it all the benefit which they could possibly have derived from such a notice written in the most perfect form. The company forthwith took action upon it as such a notice, and after proceeding, as invited by the letter, to assess the value of the machinery remaining on hand, and to consider the subject and consult counsel in regard to their liability, they base their defence to the claim on a ground entirely independent of the question of notice. Thereby any formal objection that might have been made to the notice, such as is the objection now made, was. *860 clearly waived; as is shown by the authorities referred ío in the argument of the counsel of the appellees. Flanders on Insurance 518-520; May on Insurance 567; and cases cited.
“ 3d. The County court erred in refusing to give the ^rg^. jnstruction as asked for by the defendants’ counsel, which correctly embodied the law. See Angell on Fire and Life Insurance, page 257, sections 226, 227 and 228; also Columbian Insurance Co. v. Lawrence, 10 Pet. R. 507; and thé Circuit court erred in refusing to reverse said judgment of the County court upon said ground.”
The defendants’ objections to the action of the County court, upon the instructions asked for, are the subject of the 2d of the said three bills of exception.
The first instruction relates to the necessity of giving the notice and furnishing the preliminary proofs required by the policy. As asked for, the 1st instruction is in these words:
“ 1st. That it was the duty of the plaintiffs, within a reasonable time after the fire, to give 'the defendant notice of their loss and damage, and as soon thereafter as possible to deliver to the defendant as particular an account of the loss and damage as the nature of the case admitted, signed with their own hands; and also to accompany the same with their oaths or affirmation, declaring the said account to be true and just, showing also the ownership of the property insured; what was the whole cash value of the subject insured; in what manner the buildings, insured, or containing the subject insured in the several parts thereof, were occupied at the time of the loss; who were the occupants of the building; and when and how the fire originated, so far as they know or believe. .And also to produce a certificate under the hand and seal of a magistrate or *861 notary public, most contiguous to the place of fire, and not concerned in the loss; stating that he had examined the circumstances attending the fife, loss or damage alleged; that he is acquainted with the character and circumstances of the claimants; and that he verily believed that such claimants had by misfortune, and without fraud or evil practice, sustained loss and damage to the subject insured to the amount which such magistrate or notary should certify; and unless the jury is satisfied from the evidence that the plaintiffs complied substantially with these requirements of the conditions annexed to the policy, and made part of it before they brought this suit, they must find for the defendant.” ,
The County court modified this instruction by adding at the end of it these words: “Unless they believe from the evidence the defendant waived said preliminary proof;” and then gave it with that modification.
Undoubtedly if the defendant waived the preliminary proof the plaintiff was not bound to furnish it; and if there was evidence before the jury tending to show that the defendant did waive the said preliminary proof, then it was proper for the County court to make the said addition; and the jury would have been misled by giving the instruction without it.
"Was such evidence before the jury?
I think there was. The fire occurred on the 7th of July 1872. Two days thereafter, to wit: on the 9th of July, the letter before referred to, from F. T. Sheets to Eolston, the president of the company, was written, giving notice of the loss, which was sent and received in due course of mail. The said Eolston, in consequence of said letter, called a meeting of the board of directors of said company, which met accordingly in *862 Harrisonburg on the 15th of July, just eight days after the fire, and six after the date of the letter. At that meeting, the burning of the mill of Sheets & Co. being Preseütefi f°r consideration, “a committee of five was appointed to investigate the matter as to the firm having taken the homestead;” and a general meeting of company was called to take place in the courthouse July 29th, and notice of it was directed to be published in the Rockingham Register. On the 29th of July it seems there was a general meeting of the company according to the notice; and there were also, at the same time and place, two meetings of the board of directors; at one of which, the committee appointed to investigate the matter of the homestead, reported that the homestead of Yanlear (one of the firm of F. T. Sheets & Co.) was on record in the clerk’s office, Staunton, Ya., but the homestead of Sheets (the other member) was not recorded. At the same meeting of the board, the case of Sheets & Co. was placed in the hands of Woodson & Co., as counsel of the insurance company, and said counsel were to report to the board at a future day.
After the adjournment of the meetings held on the 24th of July 1872—at which the only subject of discussion was, whether the plaintiffs, or either of them, had taken the benefit of the homestead law—F. T. Sheets met with A. S. Byrd, who was an agent of the insurance company, to obtain policies of insurance, and asked him what had been done in the meeting. Byrd told Sheets that the meeting had turned the case over to Woodson & Compton as counsel of the company for their opinion; that he thought there was an article in the constitution which operated against the claim of the plaintiffs. Byrd then read the 11th article of the constitution and by-laws of the *863 company forbidding any one to become a member who had taken the benefit of the homestead or bankrupt law, when Sheets remarked, “that knocks ns out; if I had read that article I would not have signed the con-0 # stitution.” Sheets at the same time remarked that his partner, Yanlear, had taken the benefit of the homestead law, and had it recorded; but that all that he (Sheets) had done was to get his counsel, hi. K. Trout, to write a note to the sheriff that he (Sheets) claimed the benefit of the homestead law, which notice Sheets signed and delivered to the sheriff, and said Trout told him to be effective it must be recorded; but Sheets did not execute any deed of homestead for record, and the notice was given in the year 1870 prior to the passage of the homestead act of June 1870. The notice was •exhibited on the trial, and is copied in the record.
In August or September 1872, the plaintiff Sheets met with Rolston,. president of the insurance company, in Harrisonburg, and remarked to him that he had heard that the counsel of the company had decided against his claim; to which Rolston replied, that he had so understood, and that he did not see how the company could pay him unless the matter was tested by a suit; and Sheets then informed him that he would sue the company; and directed his ■counsel to bring suit. The letter of July 9th, 1872, was the only paper which passed between the plaintiffs, or either of them, and the company, until after the suit was brought on the 8d of October 1872; and no reference had been made in any conversation between the plaintiffs, or either of them, and the insurance company, or any of its agents, about the sufficiency of said letter as notice of the loss, or upon the subject of the preliminary proofs required by sect. 4th of the conditions of insurance, until after the 6th *864 of November 1872, more than a month after the suit , . , was brought.
The company had not refused to pay the plaintiffs their claim for insurance, but was holding; the same under advisement until after they were sued: and they did not finally refuse to pay until a meeting on the 24th of February 1878, when they resolved that F. T. Sheets & Co. had forfeited their rights to become members of the company under article 11th of the constitution, by having taken the benefit of the homestead, and that therefore their policy was null and void and of no effect. In all the conversations .between the plaintiffs and the officers and agents of the company, and in the company meetings, the only question discussed or mentioned was, the effect of the alleged taking of the benefit of the homestead law by the plaintiffs upon their policy, and no other objection to their claim was stated.
I think, according to the authorities referred to by the counsel for the appellees, the facts proved as before stated show,.that the appellant waived the preliminary proofs. ‘ In Flanders on Fire Insurance, pp. 541, 542, that writer says: “The insurer may waive, in whole or in part, any of the ordinary proofs. Their requirement is a formal condition, introduced solely for his benefit, and their waiver, in effect, strikes the condition out of the contract. The waiver need not be express. It may be inferred from the acts of the insurers which evidence a recognition of liability, or from their denial of obligation exclusively for other reasons. That is, if the refusal to pay the loss is put upon grounds other than the insufficiency or defectiveness of the notice or proofs furnished, the insurers will be held to have waived objections of that character.” “The refusal to recognize the existence of any claim, *865 or a general refusal to pay, renders the delivery of notice and proofs a useless ceremony, and is treated as waiving a strict compliance with the condition as to preliminary notice and proofs, both in respect to form and time.”
In May on Insurance, pp. 573, 574, that writer says:
“A distinct denial of liability and refusal to pay on the ground that there is no liability, is a waiver of the condition requiring proof of the loss. It is equivalent to a declaration, that they will not pay though the proof be furnished; and to require the presentation of proof in such a case, when it can be of no importance to either party, and the conduct of the party in favor of whom the stipulation is made, has rendered it practically superfluous, if but an idle formality, the observance of which the law will not sustain.”
The cases cited by these writers fully sustain them in the views they present. They are collected in Littleton & Blatchley’s Digest of Fire Insurance Decisions, Baites’ edition, title Waiver pp. 700-709. Among them are the cases of Tayloe v. The Merchants Fire Insurance Co., 9 How. U. S. R. 390, and Blake v. Exchange Mutual Insurance Co., 12 Gray’s R. 265; which have a strong bearing on this case.
I have examined the authorities cited on the other side, but they do not show that the law is not as above stated. The case of the Columbian Insurance Co. v. Lawrence, 2 Peters R. 25, is explained in 9 How. U. S. R. 390, 404; where it is said that “ the doctrine of the case in 2 Peters on this point of waiver, was virtually overruled in the same case reported a second time in 10 Peters R. 507. The case of O’Neal v. Buffalo Fire Insurance Co., 3 Comst. R. 122, sustains the views contended for on the side of the appellees. Home Ins. Co. *866 v. Cohen, 20 Gratt. 312, is certainly not in conflict with them, but rather the contrary. Nor is what is said in Angell on Fire and Life Insurance, sec. 226 and 227, guch conflict.
I therefore think the County court did not err in refusing to give the 1st instruction, as asked for by the defendant; nor in giving it, as modified by the court.
“4th. The County court erred in. refusing to give the second instruction asked for by the defendant. The substance of this instruction was, that the mere taking into consideration of the question of the homestead was not of itself a waiver of the preliminary proof of loss. In other words that there was no waiver unless there was an intent to waive the preliminary proof. This instruction was wholly refused. See Columbian Ins. Co. v. Lawrence; also Home Ins. Co. v. Cohen; supra; and the Circuit court should have reversed said judgment on that ground.”
The question raised by this assignment of error has already been disposed of. The 2nd instruction therein referred to states the facts, proved by the evidence and concludes that this state of facts does not constitute a waiver of the preliminary proofs and the jury should And for the defendant. I have already stated that I think the facts proved show that the appellant waived the preliminary proofs. It follows, therefore, that in my opinion the County court did not err in refusing to give the 2d instruction asked for by the defendant.
“ 5th. The Circuit court should have reversed the action of the County court in refusing to give the 3d instruction asked for by the defendant. It was a fraud on the company for Van Lear & Sheets to sign the constitution and seek to become members of the company, when they had taken the benefit of the *867 homestead law, which was prohibited by said constitution. See Angelí on Life & F. Ins., page 223, sec. 188.”
The 3d instruction, as asked for, is in these words:
<£ 3d. If the jury believe from the evidence, that the plaintiffs or either of them, had, prior to their signing the constitution of the West Rockingham Mutual Fire Insurance Company, taken the benefit of the homestead law of Virginia, they should find for the defendant.”
The County court modified this instruction by adding at the end of it these words: ££ unless they further believe from the evidence, that the defendant, or its agents, undertook and intended to insure the property of the plaintiffs as a firm, regardless of the homestead prohibition;” and then gave it with that modification.
Rothing is said in the policy of insurance about taking the benefit of the homestead law of Virginia, unless the constitution of the company be regarded as a part of the said policy; and all that is contained in the constitution on the subject is embraced in article 11th of the constitution, which is in these words: “Ho person shall become a member of this company who has taken the benefit of the homestead or bankrupt law; and any person that may hereafter take such •steps shall forfeit his policy.”
Conceding for the purposes of this case, that the •constitution is a part of the policy, and that a violation of the 11th article of the constitution would vacate the policy or render it void; then the question arises, whether F. T. Sheets & Co., when they became members of the company, and obtained the policy, had taken the benefit of the homestead law?
D. N. Vanlear, one of the two members of the firm of F. T. Sheets & Co., and who, it seems, owned but *868 one-sixth of the property insured, had taken the benefit of the homestead law, and had his deed recorded. But F. T. Sheets, the other member of the. firm, and who, it seems, owned the remaining five-sixths of the-7 ... property, only gave notice of his claim of homestead gberiff who bad an execution against him, and uever perfected his claim by executing a deed and having it recorded according to law.
But F. T. Sheets & Co. signed the constitution and obtained the policy in their partnership name, and the-insurance was of their partnership property. They became members of the company as partners, and in their partnership name of F. T. Sheets & Co., in which name they signed the constitution. They had not. taken, and they could not take the benefit of the-homestead law as partners. Only one of them, and he owning a comparatively small interest in the subject, took such benefit as an individual. But if both had taken it as individuals, still it could not have been said that they took it as partners, or that the partnership took it. There is a wide difference between these two persons as individuals, and the trading partnership formed of the two. The former might be worth nothing, while the latter might be worth a great deal. All the property of the former might be covered by a. claim of homestead, while none of the property of the latter could be covered by such a claim. All the debts-of the latter, including their debts and liabilities to the insurance company, must be discharged before the individual partners or their individual creditors can have a right to appropriate the partnership property to their benefit. “As the language of an insurance policy is the language of the company, and they can therefore provide for every proper case, it is to be taken in the sense most favorable to the" assured.” *869 Glanders on Insurance p. 72, and cases cited. See also p. 209 and seq.
Then the policy has not been vacated or avoided by anything done under the 11th article of the constitution; and the County court did not err in refusing to .give the third instruction as asked for by the defendant. Though the said court may have erred in giving it with an addition thereto; but that error, if any, is not to the prejudice of the plaintiff in error, who cannot complain of it.
“ 6th. The Circuit court erred in refusing to reverse the action of the County court in refusing the 4th instruction asked for by the defendant.”
The 4th instruction as asked for is in these words:
“ If the jury believe from the evidence, that the plaintiffs, at the time of the procurement of the alleged policy of insurance on which this suit .is brought, made any material concealment from the defendant or its agent, in regard .to the title, or liens or incumbrances on the property insured, they must find for the defendant, no matter whether questioned in regard to liens, title or incumbrances or not.”
The County court modified this instruction by inserting therein the words: “ wilfully, with intent to deceive or defraud,” before the words: “made any material concealment,” and then gave it with that modification.
The concealment referred to in this instruction was of a vendor’s lien on the mill property insured of about $1700, which lien existed at the time of the insurance. The insurance company contends that the mere omission, without more, on the part of the insured, to give notice of this lien to the company, avoids the policy. While the plaintiffs, Sheets & Co., contend that such omission has not that effect, unless *870 it occurred “ wilfully, with intent to deceive or defraud.” And the question involved in this issue is the-one presented by the 6th assignment of error now under consideration.
There is nothing in the policy which requires a discjogure ^he insured of the liens upon the insured property. There was no question propounded by the-insurers to the insured in regard to the existence of such liens. The insurers might have examined the records for such liens, and made enquiries about them, either of the insured or others. But they failed to do so. Can they now avoid the obligation of the policy,, on the ground that the insured, without being enquired of, and without any fraud, omitted to give notice of the lien at the time of obtaining the policy ?■ I think they cannot.
In Flanders on Fire Insurance, p. 277, that writer says: “In general the insured is only required to-disclose the matters inquired about, and not the particulars of his title, unless interrogated in respect thereto, or unless it is made imperative upon him by a condition of the policy.” “But an untrue answer in an application for an insurauce, in reply to a question respecting incumbrances, or the interest of the insured, renders the policy void; and this, whether the company has a lien on the property or not. By asking the question, it would be manifest that the company deemed the information material, and it would be material that the applicant should answer it truly.” Many authorities are cited in support of what is here said and fully sustain it. Without repeating the citations here, they can readily be found by referring to the notes to that work. In one of them, Tyler v. Ætna Ins. Co., 12 Wend. R. 507, Nelson J., in stating the reason why a disclosure of title is not *871 essential, says: “The rights of the insurer are sufficiently guarded hy having it in his power to exact, by enquiry, a description of the interest of the applicant, and by the recovery being limited, in case of loss, to the value of the interest proved on the trial.”
Again, on p. 838, the same writer says: “A policy cannot be avoided for encumbrances, unless upon the applicant’s false and fraudulent answers to interrogatories,” &c.
Of course if there be a warranty, or a representation which amounts to a warranty, that there are no incumbrances on the property, whether such warranty or representation be given in answer to a question or not, if it be untrue the policy would be void even though the insured might not be guilty of actual fraud.
In 2 Hire Insurance Cases by Bennett, p. 665, is a report of the case of Delahay v. Memphis Ins. Co., 8 Humph. R. 684, in which it was held in 1848, that a failure on the part of the assured to disclose the existence of a mortgage on the property, is not a circumstance material to the risk and will not avoid the policy. See the many cases cited in the note to that case.
In 3 Id., p. 527, is a report of the case of Morrison’s adm’r v. Tennessee Marine & Fire Ins. Co., 18 Missouri R. 262, in which it was held in 1853 that the failure of the insured to disclose the state of his title, or the extent of his interest in the insured property, where there is no enquiry, will not avoid the policy, unless there is a fraudulent concealment or misrepresentation. The court in this case refer to the conflict which seems to exist between the decisions of the Supreme court of the United States on this subject, or some of them, and especially the case of Columbian Ins. Co. v. Lawrence, 2 Peters’ R. 25, and the decisions *872 in Yew York and Massachusetts, or some of them, on the same subject, and gives a decided preference to the latter. After stating the grounds relied on in support of the latter, the court say: “These views commend themselves to our judgment by their justness, and we are satisfied will effect more solid justice between the assured and the insurer than the contrary doctrine. It cánnot have escaped observation, that at first sight many of the principles of the law of insurance are seemingly very arbitrary, and their necessity and policy can only be seen and felt by those who are called upon to give them a practical application. The man without guile, who asks for insurance on his property, is not aware of the necessity of disclosures which long experience in insurance offices has shown to the underwriter to be necessary; and to hold his policy void for not making disclosures of the importance of which he is not aware, would be gross injustice. If applicants for insurance are to be held to a strict representation and proof of the nature and extent of their interest in property on which they apply for insurance, they will almost invariably lose the benefit of their policies. Are the liens of taxes, judgments, and such like, to avoid policies, unless they are disclosed, when they may be entirely out of mind and forgotten? If from a want of knowledge of the law the assured mistakes the nature of his title, although he may have one equally valuable, is his policy to be avoided ? It is no answer to say that the misrepresentation must be material. What is material must be determined from the circumstances of each case. What is material in one case may not be so in another, and so a wide field for litigation will be opened. The ends of justice will be best subserved by holding the assured only responsible for fraud. Insurance companies may *873 protect themselves by enquiries in relation to these things, and after filling their policies with so much detail and such minutiae of information in regard to other matters, as to create the impression that they are satisfied, to hold that they are not bound by their contract unless information of another kind is communicated by the assured, which is not sought for, would be enabling them to commit the rankest injustice.”
These views are very strong, and I am decidedly of opinion that they are correct. Nothing more need be added to them. If the company by the terms of its charter had a lien on property insured by it for its dues, as is the case with some mutual assurance companies, and as was the case with the Mutual Assurance Society against fire on buildings in the State of Virginia, there would be more reason in holding that a party applying for insurance was bound to disclose the existence of incumbrances on the property, whether enquired for by the insurers or not. The disclosure might be considered as material in that case, and as necessary to the validity of the policy. Sections 187 and 188 of Angell on Fire and Life Insurance illustrate the distinction between cases of a failure to disclose incumbrances where the insurer acquires no lien, and where he acquires one on the property insured. As to cases in which the insurers had a lien on the pro-, perty, see May on Insurance, § 563, and cases cited; and Shirley v. Mutual Assurance Society, 2 Rob. R. (Va.) 705.
The insurance company in this case have no lien, either by the terms of the charter or any other law, or by any contract on the property insured.
I am therefore of opinion that the County court did not err in refusing to give the 4th instruction as asked *874 for by the defendant, or in giving it with the addition-made thereto by the court.
“7th. The Circuit court ought to have reversed the-judgment of the County court for refusing to give the 5th instruction asked for by the defendant.”
That instruction is in these words: “ In this action,, the proof of the plaintiffs must correspond with the allegations of the declaration, and the plaintiffs having-averred in their declaration that they have complied with all the conditions of the policy sued on, they must prove the same, and are not permitted to avoid performance of said conditions by proof of waiver of' performance on the part of the defendant; if therefore-the jury believe from the evidence that the plaintiffs, have failed to prove a substantial compliance with all the conditions and requirements of said policy, they must find for the defendant.”
When the plaintiffs say in their declaration that they have on their part performed all the conditions of the-policy of insurance and have violated none of its-prohibitions, of course they mean such as were not waived by the defendant. Such as were waived are, in effect, as if they had never been inserted in the-contract. If the act of 1871-2, ch. 79, § 1, p. 58, Code ch. 36, § 44, p. 372, had not been passed, proof' of waiver of performance of any of the conditions of' the policy would have been equivalent to proof of performance of such conditions under a declaration averring such performance. I think that the American authorities, or a decided preponderance of them, show that to be a correct rule with us, while the English rule appears to be different. See 4 Rob. Pr. 443; and 2 Smith’s Leading Cases, Wallace’s Notes p. 74, and the cases cited. See also Ketchum v. Protection Ins. Co., 1 Allen N. B. 136; and Lycoming County Mut. *875 Ins. Co., v. Schellenberger, 44 Penn. St. R. 257, cited in the brief of the counsel for the appellees; and 5 Rob. Pr. 252; and 1 Greenleaf sec. 2, cited in the brief of the counsel for the appellees. I prefer the view taken of this subject in the American cases, as tending, more than the English view, to favor justice against technicalities, which is the growing tendency of our courts.
But under the act aforesaid, which was passed to simplify the form of declarations on policies of insurance, and in pursuance of which the declaration in this case was prepared, I do not think there can be a doubt but that proof of waiver of performance of any of the conditions of the policy was admissible in this case.
I therefore think the County court did not err in refusing to give the 5th instruction, asked for by the defendant.
“ 8th. The Circuit court erred in refusing to reverse the action of the County court for refusing to give the jury the 6th instruction asked for by the defendant.”
That instruction is in these words: “If an insurance company takes into consideration, the loss or damage sustained by a policy-holder, and decides that they will not pay the loss or damage and put their refusal to pay on other grounds than defects in the preliminary proofs or want of such proofs, this is a waiver of the necessity of furnishing the preliminary proofs required by the policy; but if the company take the matter into consideration, and make no decision as to whether they will or will not pay until after the suit is brought against them by the party insured; this does not operate a waiver of the preliminary proofs required by the policy.
I think the conduct of the defendant in placing its *876 defence solely upon the ground that the plaintiffs or one of them had taken the benefit of the homestead law before they obtained the policy, and in its proceec^ngs ]n regard to the claim of the plaintiffs, amounted to a waiver of the preliminary proofs required by the policy, although the company may not have formally decided until after the suit was brought, that it would not pay the claim on the ground aforesaid. After the company had had the claim under consideration for two or three months, the president informed the claimants that he understood the counsel of the company had decided against the claimants, and that he did not see how the company could pay it unless the matter was tested by a suit. They then informed him they would sue the company, and accordingly instructed their counsel to bring such suit. The only matter referred by thé company to its counsel, was the matter in regard to the homestead, and that was no doubt the matter which the plaintiffs understood was to be tested by a suit.
I am therefore of opinion that the County court did not err in refusing to give the 6th instruction asked for by the defendant.
“9th. The Circuit coui’t should have reversed the judgment of the County court for failing to set aside the verdict of the jury on the ground that it was contrary to the law and the evidence.”
This assignment of error involves only questions which have already been considered by me; and for reasons already given, I think the County court' did not err in overruling the motion to set aside the verdict and grant a new trial.
“ 10th. The instruction asked for by the plaintiffs and given to the jury was calculated to mislead the jury, and did not apply to the case.”
*877 That instruction was: “that if they believe from the evidence, that the defendant resisted the payment of the plaintiffs on the ground that they had taken the benefit of the homestead, and no other, that is a # waiver of defective notice of loss and preliminary „ ,, proofs.
There was no error in giving this instruction, as I have already sufficiently shown. And upon the whole I am of opinion that there is no error in the judgments, either of the Circuit or County court, and that they ought to be affirmed.
The other judges concurred in the opinion of Mon-cure P.
Judgment affirmed.