MATTHIAS M. COMBS.

v.

THE SHREWSBURY MUTUAL FIRE INSURANCE COMPANY.

1. Where one insured in a mutual company notified their agent that he had obtained other insurance on the premises, and the agent afterwards referring to the matter informed him that his insurance was all right—*Held*, that the company was bound by the notice and declaration of the agent.

2. One of the additional policies having afterwards been canceled and another for the same amount written in another company, and the same agent, on inquiry by the insured, having stated that notice of such substitution was unnecessary—*Held*, that the company was bound by the notice to him.

3. The partnership in whose name the policy was issued was dissolved before the fire, and the retiring partner's interest transferred to his copartner, who continued the business, and the company paid a dividend to him after such transfer—*Held*, that they, by the payment, waived any objection they might have had on that score.

Bill for relief. On final hearing on pleadings and proofs.

Combs v. Shrewsbury Ins. Co.

*Mr. S. M. Schanck* and *Mr. W. D. Holt*, for complainant.

*Mr. W. H. Vredenburgh*, for defendant.

THE CHANCELLOR.

This suit is brought on a policy of insurance to recover $3,000 (and interest) for the damages sustained by the destruction by fire of a grist-mill in Hightstown.   The policy was issued by the defendant March 16th, 1869, to Charles H. Woodward and John Silvers, who were then partners and owned the property. By it the defendant agreed to insure them against loss or damage (not exceeding $3,000) by fire to the mill for five years from the 24th of that month.   In May, 1869, Woodward and Silvers assigned the policy, with the consent of the company, to Archibald F. Job, as collateral security for the payment of their mortgage to him for $7,000.   Woodward and Silvers dissolved partnership April 1st, 1871, and the former conveyed his interest in the property to the latter.   The fire occurred April 13th, 1872, and the building and machinery were practically a total loss. On the 18th of May, 1874, Silvers assigned the policy (the assignment to Job was still in force) to the complainant.   On April 1st, 1878, Job's mortgage was paid off, but he never re-assigned the policy.   The bill was filed October 1st, 1878.   No notice

NOTE.—A part or joint-owner of property may insure his interest therein, *Franklin Ins. Co.* v. *Drake, 2 B. Mon. 47 ; Turner* v. *Burrows, 5 Wend. 541, 8 Wend. 144, 24 Wend, 276 ; Pratt* v. *Phœnix Ins. Co., 1 Browne (Pa.) 267 ; Converse* v. *Citizens Ins. Co., 10 Cush. 37 ; Pitney* v. *Glens Falls Co., 61 Barb. 335, 65 N. Y. 6 ;* and such insurance does not ordinarily cover the interest of the other owners, although the policy may be for the full value of the property, *Irving* v. *Excelsior Ins. Co., 1 Bosw. 507 ; Graves* v. *Boston Ins. Co., 2 Cranch 419 ; Bailey* v. *Hope Ins. Co., 56 Me. 474 ; Peoria Ins. Co.* v. *Hall, 12 Mich 202 ; Murray* v. *Columbia Co., 11 Johns. 302 ; Harvey* v. *Cherry, 12 Hun 354, 76 N. Y. 436 ; Miller* v. *Eagle Ins. Co., 2 E. D. Smith 268 ; Millaudon* v. *Atlantic Ins. Co., 8 La. 557 ; Finney* v. *Bedford Ins. Co., 8 Metc. 348 ; McCormick* v. *Ferrier, Hay. & Jon. 12 ; Ohl* v. *Eagle Co., 4 Mason 172 ;* but the policy may be reformed so as to cover all the interests, if a mistake be shown, *Keith* v. *Globe Ins. Co., 52 Ill. 518 ; Manhattan Ins. Co.* v. *Webster, 59 Pa. St. 227 ; Snell* v. *Atlantic Ins. Co., 98 U. S. 85 ;* or such insurance may be ratified afterwards by the other owners, *Turner* v. *Burrows, 8 Wend. 144.*

Combs *v.* Shrewsbury Ins. Co.

of the transfer by Woodward to Silvers of his interest in the property was given to the company. When the policy was taken out in March, 1869, there were on the property four other valid and subsisting policies of insurance for $2,000 each, against loss or damage by fire, in other companies, taken out by and in favor of Woodward and Silvers. They were for one year, and expired in or about January, 1870, and in March of that year four new policies for three years were issued to Woodward and Silvers by the same companies on the property, for $1,650 each, $900 on the mill and $750 on the machinery. Whether the defendant had notice thereof and consented thereto, is the main question discussed on the hearing. It should be stated that on the 6th of October, 1871, after the transfer by Woodward to Silvers, the defendant, through its agent, Ira Smock, through whom the insurance in question was taken, paid a dividend of its profits to Silvers. It was awarded by the company, however, to Woodward and Silvers, but they had then dissolved partnership, and Smock knew it. The policies taken out in other companies were not taken out through Smock, but through an agent named Pearce. The policy in suit provided that in case the insured should have already any other insurance against loss by fire on the property thereby insured of which notice was not given to the defendant and mention made in or endorsement

---

One joint owner may recover his portion from the other, *Starks* v. *Sikes, 8 Gray 609; Manhattan Ins. Co.* v. *Webster, 59 Pa. St. 227; Briggs* v. *Call, 5 Metc. 504.*

If a joint insurance be averred, proof of insurance to only one cannot be shown, *Burgher* v. *Columbian Ins. Co., 17 Barb. 274; Tate* v. *Citizens Co., 13 Gray 79;* nor the converse, *Stetson* v. *Ins. Co., 3 Phila. 380;* but if the policy be issued to A and B; loss first payable to A, he may recover, *Westchester Ins. Co.* v. *Foster, 90 Ill. 121.*

An insurance for the benefit of the actual responsible partner is good, although taken in the name of the firm and not disclosed, *Phœnix Ins. Co.* v. *Hamilton, 14 Wall. 504; Gould* v. *York Ins. Co., 47 Me. 403.*

An insurance by another joint-owner of his interest, without notifying the company of the prior insurance of another owner, does not affect the latter, *Franklin Ins. Co.* v. *Drake, 2 B. Mon. 47;* or, a claim of a homestead by one partner in violation of a condition in the policy, *West Rockingham Ins. Co.* v. *Sheets, 26 Gratt. 854.*

Combs *v.* Shrewsbury Ins. Co.

thereof made on the policy, the insurance effected by the policy should be void and of no effect. And further, that if the insured or their assigns should thereafter make any insurance on the same property, and not give notice thereof to the defendant and have the same endorsed on the policy or otherwise acknowledged by the defendant in writing, the policy should cease and be of no further effect.

There was also a by-law of the company as follows:

" To prevent frauds and avoid inconveniences, no person or persons insuring their buildings or property in the office of this institution, shall receive benefit from the same if such building, buildings or property are insured in any other office or place unless such insurance is made known to the directors, their approbation obtained, and an endorsement to that effect made upon the policy of this company."

It appears by the evidence that when the policy in suit was issued there was other insurance in other companies upon the property to the amount of $8,000. Whether the agent of the defendant was notified of it or not, does not appear distinctly. He says he thinks he did not know of it. But, however that may have been, those policies expired late in 1869, and others, having three years to run, were taken in their place from the same companies. Of those new policies the agent of the defend-

A stockholder may insure his interest in the corporation, *Warren* v. *Davenport Ins. Co., 31 Iowa 464;* see *Phillips* v. *Knox Ins. Co., 20 Ohio 174; Sweeny* v. *Franklin Ins. Co., 20 Pa. St. 337; Shawmut Co.* v. *Hampden Ins. Co., 12 Gray 540.*

A conveyance of an undivided interest, by the assured, avoids the policy, *Western Ins. Co.* v. *Riker, 10 Mich. 279.* See *West Branch Co.* v. *Helfenstein, 40 Pa. St. 289; Stetson* v. *Mass. Co., 4 Mass. 330.*

*Aliter,* as to an acquisition of such interest, where the grantee had a policy on the premises in another right, *Burbank* v. *McCluer, 54 N. H. 339; Heaton* v. *Manhattan Ins. Co., 7 R. I. 502; Cowan* v. *Iowa Ins. Co., 40 Iowa 551.* See *Peoria Ins. Co.* v. *Hall, 12 Mich. 202; Rankin* v. *Andes Ins. Co., 47 Vt. 144.*

Partners cannot have insured as their property, lands of which one partner holds the title, although the firm has the use thereof, *Citizens Ins. Co.* v. *Doll, 35 Md. 89.* See *Castner* v. *Farmers Ins. Co. (Mich.), 7 South. Law Rev. 483; Peck* v. *New London Ins. Co., 22 Conn. 575.*

A conveyance of the property insured does not carry with it an assignment

Combs *v.* Shrewsbury Ins. Co.

ant had notice. And he notified the defendant. Silvers testifies on the subject that he notified Smock of the taking out of those policies and requested him to notify the company that he had so effected more insurance on the property and Smock promised to do so; that afterwards Smock told him the company wanted an estimate of the value of the property and read to him a letter which he had received from the company on the subject; that he referred Smock to the estimate which Pearce, the agent through whom the policies in the other companies had been obtained, had made, and offered to get it; that he went to Pearce's office and got it and gave it to Smock; that Smock wrote a letter, put the estimate in it and sealed it in his presence, and said that when he went to dinner he would put it in the post-office; that the letter was written to some of the officers of the company, he thinks to Wolcott (then treasurer); that he met Smock again some time afterwards, probably two or three weeks, and as he was about to pass by him, Smock said:

" Oh ! I've got a letter from the Shrewsbury Fire Insurance Company and your insurance is all right."

This statement is not contradicted, nor is its credibility in

of the policy of insurance thereon, *Hobbs* v. *Memphis Ins. Co.,* 1 *Sneed 444; Kitts* v. *Massasoit Ins. Co.,* 56 *Barb.* 177 ; *Sherwood* v. *Agricultural Ins. Co.,* 10 *Hun* 593. See *Hamilton* v. *Baldwin,* 15 *Beav.* 232.

The death of the assured does not terminate the policy, and his heirs or representatives may recover, *Geo. Home Ins. Co.* v. *Kinnier,* 28 *Gratt.* 88 ; *Burbank* v. *Rockingham Ins. Co.,* 24 *N. H.* 550 ; *Lappin* v. *Charter Oak Ins. Co.,* 58 *Barb.* 325 ; so, a surviving partner, *Oakman* v. *Dorchester Ins. Co.,* 98 *Mass.* 57 ; *Wood* v. *Rutland Ins. Co.,* 31 *Vt.* 552. See *'Work* v. *Merchants Co.,* 11 *Cush.* 271 ; and a loss before the deed has been delivered in a partition among the heirs, has been held recoverable, *Gates* v. *Smith,* 4 *Edw. Ch.* 702. See *Clinton* v. *Hope Ins. Co,* 45 *N. Y.* 454 ; or, sale by the orphans court to pay debts of the decedent, before confirmation, *Farmers Ins. Co.* v. *Graybill,* 74 *Pa. St.* 17. *Aliter* after partition consummated, *Barnes* v. *Union Mut. Ins. Co.,* 51 *Me.* 110. (See *Allison* v. *Phœnix Ins. Co.,* 3 *Dillon* 480, 486).

A transfer by one partner or tenant in common to another, has been held not to be an alienation, within the meaning of the usual condition in a policy, so as to avoid it, in the following cases: *McMasters* v. *Westchester Ins. Co.,* 25 *Wend.* 379 ; *Wilson* v. *Genesee Co.,* 16 *Barb.* 511 ; *Hoffman* v. *Ætna Ins. Co.,*

any wise impeached. On the other hand, it is corroborated in some very material respects. It is admitted that Wolcott wrote a letter to Smock, dated March 7th, 1870, in which, after acknowledging the receipt of a letter from Smock on the subject of the additional insurance, he says :

" Before giving our assent or approval of the additional insurance asked for, please give in the best of thy knowledge the present value of said mill and contents, together with the name of each office and amount insured in each."

Smock has no recollection of the transaction beyond the receipt of that letter, and he had wholly forgotten that until the letter was found by Silvers among Smock's letters. Smock, soon after the fire, in a conversation with Silvers, denied that he had ever had any notice whatever of the additional insurance, and declared that he was willing to testify that he had never had any, but after the letter was found he remembered the fact that he received it, but he does not remember writing the letter to which it is an answer, nor does he remember whether he answered the treasurer's letter or not. He evidently remembers but little of the matter, and no reliance is to be placed on his

19 *Abb. Pr. 325*, 1 *Roberts. 501*, 32 *N. Y. 405;* Insurance Co. v. *Thompson*, 5 *Otto 547, 550;* Burnett v. *Eufaula Ins. Co.*, 46 *Ala. 11;* Dermani v. *Home Ins. Co.*, 26 *La. Ann. 69;* Lockwood v. *Middlesex Assurance Co.*, 47 *Conn. 553;* Pierce v. *Nashua Ins. Co.*, 50 *N. H. 297;* Texas Ins. Co. v. *Cohen*, 47 *Tex. 406;* West v. *Citizens Ins. Co*, 27 *Ohio St. 1;* Cowan v. *Iowa Ins. Co.*, 40 *Iowa 551;* Hobbs v. *Memphis Ins. Co.*, 1 *Sneed 444.* See *Mann* v. *Western Assurance Co.*, 19 *U. C. Q. B. 314;* Hutchinson v. *Niagara Ins. Co*, 39 *U. C. Q. B. 483.*

But a contrary rule has been held in *Hartford Ins. Co.* v. *Ross*, 23 *Ind. 179;* Dix v. *Mercantile Ins. Co.*, 22 *Ill. 272;* Keeler v. *Niagara Ins. Co.*, 16 *Wis. 550;* Dreher v. *Ætna Ins. Co.*, 18 *Mo. 128;* Curd v. *Phœnix Ins. Co.*, 4 *Mo. App. 424;* Murdock v. *Chenango Ins. Co.*, 2 *N. Y. 210;* Tilloti v. *Kingston Ins. Co.*, 5 *N. Y. 405;* Howard v. *Albany Ins. Co.*, 3 *Denio 301;* Baltimore Ins. Co. v. *McGowan*, 16 *Md. 47;* Finley v. *Lycoming Ins. Co.*, 30 *Pa. St. 311;* Buckley v. *Garrett*, 47 *Pa. St. 204;* Portsmouth Ins. Co. v. *Brinckley* (*Va.*), 2 *Ins. Law Jour. 842.* See, further, *Collins* v. *Charlestown Ins. Co.*, 10 *Gray 155;* Dey v. *Poughkeepsie Ins. Co.*, 23 *Barb. 623;* Keeney v. *Home Ins. Co.*, 3 *N. Y. Supr. Ct. 478*, 71 *N. Y. 396;* Shuggart v. *Lycoming Ins. Co.*, 55 *Cal. 408;* Home Ins. Co. v. *Hauslein*, 60 *Ill. 521.*—REP.

Combs v. Shrewsbury Ins. Co.

recollection in regard to it. The letter corroborates Silvers in his statement that he gave notice to Smock of the additional insurance and requested him to get the company's consent, and that Smock showed him a letter he had received from one of the officers (he says he thinks it was Wolcott) asking for an estimate of the value of the property. Silvers, as before stated, testifies explicitly that the estimate was furnished by him, was enclosed by Smock in his presence in a letter to the company which he said he was going to put in the post-office on his way to dinner, and that afterwards Smock told him of his own accord that he had got a letter from the company and his insurance was "all right,"—in other words, that the company consented to the additional insurance. The company is bound by the notice given to its agent. *Schenck v. Mercer Co. Ins. Co., 4 Zab. 447.*

But further—though, according to the company, it never received any answer to the letter above quoted—it appears, according to its version of the transaction, that it never took any further action in the matter, but with the knowledge that the additional insurance had been obtained, and that its consent to it was desired for the protection and security of Woodward and Silvers, it did not notify them that it would cancel its policy, but not only left them to understand that their policy was valid, but held them, up to the time of the fire, as members of the company, liable to contribute, through assessment, to the payment of its losses. On the statement of the officers of the company themselves, fair dealing required the company, if it declined, in view of the additional insurance, to continue the policy, to notify Woodward and Silvers of the fact without delay, in order that they might obtain insurance elsewhere, and their liability as members of the company might cease. And if they received no reply to the treasurer's letter to Smock, within a reasonable time, it was their duty to press the matter to a reply, or give notice of the cancellation of the policy in their company. The notice of the additional insurance was given as early as March 6th, 1870, and the fire did not take place until April 13th, 1872, over two years afterwards; and in all that time, the company, although it had notice of the additional insurance, and had

asked for more particular information on the subject than was given in the notification, but had not, as it says, received it, did no act to indicate unwillingness to continue its policy. On the contrary, in October, 1871, it paid Silvers, as one of its members, by virtue of the policy, a dividend of its profits, and during the whole period from March, 1870, to April, 1872, held him and Woodward liable, as members, by virtue of the policy, to contribute to the losses which it might sustain. It must, under the circumstances, be held to have acquiesced in and consented to the additional insurance. Nor is it at all clear that it did not receive the information asked for in the letter of March 7th, 1870, and give its consent in writing, by letter, as Silvers swears Smock told him it did. The business of the company appears to have been done somewhat loosely, to say the least of it, and it is not at all surprising to find that there is a want of knowledge or recollection as to the transaction on the part of the officers, for they testify at the distance of ten years after it took place. Moreover, the company is estopped by the statements of its agent, and although the insured cannot produce the company's acknowledgment in writing, he produces proof, by the statement of its agent, that it was thus made, for, as before stated, Smock told Silvers that he had received a letter from the company, and (in substance) that the company was satisfied with and assented to the additional insurance.

In *Mentz* v. *Lancaster Fire Ins. Co., 79 Pa. St. 475,* where the plaintiff insured in the defendant company, and one condition was that if additional insurance were effected, it should be endorsed on the policy, the plaintiff effected additional insurance in another company, with its agents, who were also agents of the defendant. On inquiry by the plaintiff, who gave his policy to the defendants' agent, the latter untruly told him that the endorsement of the additional insurance had been made on the policy issued by the defendant. It was held that the defendant was estopped, by the declaration of its agent, from objecting to the want of endorsement. Judge Sharswood, delivering the opinion of the court, said:

Combs v. Shrewsbury Ins. Co.

"It was admitted, on the trial of the cause below, that Murray & Clow were the agents, at Titusville, of the defendant in error and the Armenia Fire Insurance Company. There was no evidence tending to show that their powers were special. It must be assumed, then, that they were authorized to act as the general agents of the companies in all matters relating to the effecting of insurance on their behalf. It may be conceded that, as such general agents, they would have no power to waive an express condition in the policy. But the question was not of their power to do this, but whether their declaration of a fact, namely, that the condition had been actually complied with, would not estop the company from controverting that fact. The evidence offered and rejected was that the agent had told the assured that the proper endorsement had been made on the policy. Now, such a declaration, made by a duly authorized agent or officer, would clearly operate as an estoppel. It lulled the party to sleep by the assurance that the conditions of the policy had been complied with, and that the indemnity was secured."

As to the character of Smock's agency, there is nothing in the letter of appointment to limit his authority. He is thereby informed that he has been appointed an agent of the company. Though the letter states that the appointment was made at a special meeting of the directors, held at Eatontown on the 11th of February, 1856, I find no minutes of such meeting. It appears, from the letter, that he was appointed a general agent. He advertised himself as agent of the company.

The defendant insists that if it be held to have received due notice of the additional insurance in March, 1870, it had none of the cancellation of one of the policies (in the International Insurance Company of New York) in June, 1871, and a substitution of a policy for the same amount, in another company, the Franklin Fire Insurance Company of Philadelphia. But the proof is that notice was given to Smock by Silvers, who asked him whether it was necessary to notify the company, and he replied that he thought it was not.

Silvers did not notify the company of the transfer of Woodward's interest in the property to him, and the company insists that, therefore, the policy is annulled, under the provision that, in case of any transfer of the interest of the insured in the property, either by sale or otherwise, without the consent of the company, the policy shall from thenceforth be void and of no effect. But, in the first place, it is at least doubtful whether it was

intended that that provision should extend to the transfer by one of the joint owners of his interest in the property, to the other. The risk would not be in any wise affected by the transfer. No new owner would be introduced. The company originally insured Silvers as one of the joint owners of the property, and all the change wrought by the transfer, on this head, was that, after it, the insurance was for his benefit alone, as sole owner, whereas, before, it was for his interest and that of Woodward, as joint owners. In the next place, the payment of the dividend to Silvers alone, in October, 1871, after the transfer took place, and with knowledge of it, was a waiver of objection on that ground. And again, Silvers swears that, at a meeting of the defendants' board of directors, held after the fire, and at which he was present, this objection was expressly waived. He says that, when he asked if they intended to take advantage of it, they said they had made it a rule not to take advantage of that objection where the risk was not increased, and they did not claim that, in this case, the risk had been increased, and waived the objection. He further says that they said that the only ground on which they put their refusal to pay the claim was, that he had got other insurance without their consent.

Objection is made by the defendant on the ground of delay in bringing suit. The policy contains no limitation, and the answer sets up no defence, either of laches or limitation.

There will be a decree for the complainant for the amount insured, with interest, for the property was worth more than all the insurance on it. The policy provides that payment shall be made within ninety days after proof of loss. The proof (which is lost) was made and served apparently about thirty days after the fire. The complainant will be allowed interest from a period of one hundred and twenty days from the time of the fire.