Anderson, J.
The building known as the National hotel in the city of Norfolk, was erected on a lot of land which was held by French’s Hotel Company, under a demise by deed from the Mechanical Benevolent Society of Norfolk for a term of ten years, renewable for ten years, and for every successive period of ten years, determinable at the election of the lessor, at the expiration of any term, upon six months’ notice, by taking the building and paying for it at valuation.
On the 1st of May, 1855, French’s Hotel Company, by deed conveyed, transferred and assigned all their right, title and in *544 terest in the leasehold and building to Bray B. Walters. And at a sale made by public auction under deeds of trust by the heirs of B. B. Walters, of said property, Thomas J. Corprew became the purchaser 'at the price of $34,000, and the trustees and the heirs united in a deed conveying the same to him, bearing date December 31st, 1870.
*S-ubsequently Corprew conveyed the same by several deeds of trust to secure debts due from him to the Merchants and Mechanics Bank; to the Norfolk Trust Company, and to the Exchange National Bank of Norfolk. And on the 31st of July, 1870, the said Corprew and his said creditors and trustees united in the sale of the same to the appellees, James R. Holt and Joseph H. Holt, and conveyed it to them by deed bearing date December 26, 1872, for the consideration of $37,100.
This suit was brought in chancery by the Mutual Assurance Society of Virginia against the said James- R. and Joseph H. Holt, to subject the property to the payment of arrearages which they allege to be due them, and to be chargeable on the said property by virtue .of a declaration for insurance made in their society on the 17th of July, 1841, by the president of the Mechanical Benevolent Society of Norfolk, owner of the land, and the president of French’s Hotel Company, owner of the building, which was valued at $40,000, making the Merchants and Mechanics Savings Bank, the Norfolk Trust Company, and the Exchange National Bank and the trustees, and the Mechanical Benevolent Society also defendants.
James R. and Joseph H. Holt, in their joint answer, say that they have no knowledge of any of the allegations of the bill with regard to the insurance of the property, and they call for strict proof thereof; and they allege and prove that they had no notice of said alleged insurance, or of any claim for arrearages by said assurance society when they purchased, and in fact did not know of the existence of said society, and if there is anything due it, which they do -not admit, they deny that the property in their hands is liable for its payment, and insist that the society should look to the former owners of the property for payment. But if it should appear that the society has any claim which is chargeable *on the property, they insist that inasmuch as there is a balance of the purchase money still due from them for the property they should be allowed to pay it out of the same.
Their answer and the several pleas of the Merchants and Mechanics Savings Bank also put in issue the validity of the alleged contract of insurance, averring that it was contrary to the constitution, rules and regulations of the society; that the hotel company had not such interest in the property as was insurable, and the contract was, at the time of its inception, and now is, void and of none effect. And the Mechanical Benevolent Society, in its answer, denies that it owes anything to the plaintiff, or that there is now or ever has been any liability on it for quotas, or that there now is or ever has been any lien upon the land therefor; and it avers that its president, by uniting with the president of the hotel company in the original declaration for assurance, did not create, nor was it intended to create, any lien or charge on said land, but was only intended to indicate its willingness and consent to the insurance of said buildings, upon which it had a previous lien, to the extent of the ground rent and the taxes.
And in this position it seems to be sustained by the acts of the plaintiff, and the hotel company subsequently; the latter making, and the former receiving from it a sole and separate declaration for insurance of the same property, in which reference is made to the former declaration, in which the Mechanical Benevolent Society had united as aforesaid, as the sole declaration of the hotel company, and the issue of a policy thereon accordingly. And in all the subsequent dealings between them no reference is made to the Mechanical Benevolent Society, but the hotel company is treated as the party solely insured, and liable for the quotas and requisitions of the ’•’Mutual Assurance Society. And it could not be otherwise if the Mechanical Benevolent Society be regarded only as owner of the land, as represented in the original declaration. The land under the act of incorporation was not insurable. It was only an insurance on buildings against fire that was authorized by the act of incorporation. An insurance of land against fire involves an absurdity. And yet it seems to be contemplated by the constitution, rules and regulations of the society that the insured should have an interest in the land also, upon which the buildings stand. By article VIII, section 4, “Any person holding a complete unencumbered fee simple title to buildings, with the land on which they stand;” “any tenant under lease renewable forever, or any persons holding buildings erected on land to which they have a legal title but subject to a ground rent forever, may make a complete and effectual insurance.” The averment of the joint answer of the Messrs. Holt is that the Mechanical Benevolent Society had no interest in the buildings, and that they and the preceding owners of the property have no other than a leasehold interest in the land, determinable at the expiration of every ten years, at the option of the Mechanical Benevolent Society. But when the leasehold of the land was terminated their title to the buildings was terminated also, and became vested in the Mechanical Benevolent Society. So it would seem that by the terms of the contract between the hotel company and the Benevolent Society, by which the former was privileged to erect buildings on the latter’s land, it had no better estate in them when erected than in the land. It held them precisely as it held the land — at the option of the Benevolent *545 Society, only for the term or for any succeeding term. And it not being a fee, nor a lease renewable forever, and the hotel company not having a legal title to the land upon which the buildings stand, *but subject to a ground rent forever, it would seem to follow that it did not hold such interest in the property as was, according to the rules and regulations of the society, insurable. The question whether it was insurable jointly by the two companies need not be considered, as that was not done, if the plea of the Merchants and Mechanics Savings Bank is sustained; and if the acceptance by the Assurance Society of the separate declaration for insurance of the same property by the hotel company (No. 14,837), and the issuing a policy thereon to said company, can be held to be a surrender or waiver by the Assurance Society of any right it might have had to hold the Benevolent Society bound by its having united in the original declaration. As to what is the effect of a declaration on revaluation is involved in some obscurity by the practice of the Assurance Society. If it was intended merely to revalue the property, and not for a renewal or modification of the contract, why should there be a declaration for insurance? and why should a new policy issue thereon?
There is another ground upon which it might be argued that the original contract of insurance was void, viz: that the property had been insured elsewhere for ten thousand dollars, when the original declaration for insurance was made in this society. By article VIII, section 14, “buildings insured elsewhere shall not be insured in this society.” And such insurance, it is declared, “shall be void.” There is a proviso; but that does not apply to this clause of absolute inhibition; but only to insurances obtained elsewhere, after the property has been insured in this society, which are permitted on certain express conditions. These are interesting and important questions. As by article X, section 13, the society has declared that “if a policy be at any time issued for the purpose of insuring a building, which according to *the rules and regulations of the society, is not insurable, the fact that such building is not insurable being ascertained shall render the policy void and of no effect.” And by article XT1I, section 1, “the society only undertakes to pay for loss by fire, when the building has been insured in strict conformity to the constitution, rules and regulations of the society.” And the party claiming compensation is required to make affidavit that he “doth believe that the said building” was “insurable and was properly insured in or by the said society according to the constitution, rules and regulations thereof.”
In view of these prescriptions and regulations of the society, I think it is but just and right that it should be held to make out a clear case of liability on its part to repair the loss if the building was damaged or destroyed by fire, before its claims for premiums and quotas, or other requisitions, could be enforced against the property, and consequently, that the proprietors of the buildings are entitled to the benefit of any doubts with regard to the validity of the insurance.
But this case must be considered in another of its aspects. The hotel company sold and conveyed its interest in the land and building by deed bearing date the 1st of May, 1855, to Bray B. Walters. And on the 12th day of October, 1857, William L,. Walters, for himself and the other heirs of Bray B. Walters, then deceased, by declaration No. 18,615, declared for the assurance of said building, valued at $40,000, in the said assurance society, for $12,500, “subject to a deed of trust to French’s Hotel Company; the sum of $5,000 being insured in the American and $5,000 in the Franklin offices.” It is agreed that there was no agent of the society in the city of Norfolk from about the 10th of May, 1862, to the 30th of May, 1865, and that all communication between the city of Norfolk and the home office in the city of Richmond ^during that period was forbidden; and that on the 14th of January, 1864, the said property was insured in several other offices, together, for the sum of $20,-000. And this was before the sale and conveyance to Thomas J. Corprew.
According to article VIII, section 14, the insurance in this society, if it was valid and in force up to the 14th of January, 1864, when it was insured elsewhere to the amount of $20,000, then became void. The language of the section is: “Buildings insured elsewhere shall not be insured in this society, and if any person or persons owning a building or buildings now insured, or which may be hereafter insured in the office of this society, shall effect insurance thereof elsewhere, he, she or they shall forfeit all benefit of the insurance made by this society on such building or buildings. Every insurance which has been, or hereafter may be, effected contrary to this rule, is, and shall be void.” But there is a conditional proviso in favor of any person “who has made, or may hereafter make, insurance in the office of this society, and shall be desirous of making farther insurance in any other office on the same buildings,” that he “shall be at liberty to do so, and his insurance in this office shall be good and effectual; but on condition only that the whole sum insured by this society and elsewhere, does not exceed four-fifths of the whole value shown by his * * declaration; and provided also, that such person or persons give written notice to the principal agent, of such farther insurance and the amount thereof, which shall be endorsed on the policy issued by this society and on the declaration filed in this office.”.
Neither of the foregoing conditions was complied with in this case. The insurance in this society, if it be only for $12,500, and the insurance elsewhere for $20,000, amount together to more than four-fifths of the whole *value of the property, as *546 shown by the declaration. Nor was the second condition complied with. The notice required is not shown to have been given, nor the endorsements made upon the policy and declaration as required. This case .does not fall within the proviso, and consequently by the positive declaration of said 14th section, the insurance is void.
But the clause next following provides that “all premiums and quotas paid, or which may be required to be paid under any such insurance, shall be considered as forfeited to the society.” This language imports that the invalidation of the insurance shall not entitle the insured to a restoration of what he had previously paid under the lawful requisitions of the society; nor to be released from premiums and quotas for which he was liable when the insurance became void, which may still be required to be paid, and the property held to be liable for them. But to hold that when the property is no longer insured, the owner is liable to pay for losses by fire, which parties insured have incurred, beyond what he had incurred a liability to pay before his insurance became void, would be to hold him liable to contribute for losses which others had sustained when there was no corresponding obligation on them to contribute for his losses, which would be vio-lative of all mutuality in the contract, and destructive of the fundamental principle upon which this whole scheme of insurance is projected.
This plainly appears from the title to the act of incorporation, “an. act for establishing a mutual assurance society against fire,” &c.; and by the first clause of the second section, which enacts, “that an assurance be established to be called and known by ths-name of the Mutual Assurance Society,” and the principles whereof shall be “that the citizens of this state may insure their buildings against the losses and damages occasioned *accidently by fire, and that the insured pay the losses and expenses, each his share according to the sum insured.” To construe the clause of the article under consideration, as requiring the owner of the property after it had ceased to be insured, and when he is not one.of the insured, to be subject to future orders for quotas and contributions to repair losses afterwards incurred by the insured, and when he would not have a corresponding right to a contribution from them, if his property was damaged or destroyed by fire, would be a plain violation of the foregoing provision of the act of incorporation in its letter and spirit.
The same remarks are applicable to the next clause of the said section, which is as follows: “Nevertheless, the property insured and the owners thereof, shall remain liable for all demands until regularly discharged, according to the laws and 'rules of the society.” “All demands” can only mean what the society had a right to demand, which we have seen were only arrearages due, and with which the property was chargeable when the insurance was terminated.
There is a mode prescribed by article IX, section 12, by which a member may be discharged, but it is not declared to be the only mode; and if it were, until so discharged, he could not, as we have seen, be held liable for after-requisitions made upon the insured when he was no longer insured, but only for such as were prior to the termination of his insurance. This mode provides for a voluntary and express withdrawal from the society; and there are two requisites to entitle him to a discharge in that mode: first, the payment of all premiums, quotas and other claims as are then due from him; and second, notice of his withdrawal. If these requisites have been met they are effectual for his discharge, although a regular discharge may not have been granted him. But, as has been *said, it is not the only mode by which he may be discharged, as is implied by article VII, section 13. It provides that any member having paid the premiums on his buildings, the same being insurable, &c., shall be insured at 12 o’clock at noon of the day on which he may have made such payment, and such insurance shall continue to be in force until the same shall be withdrawn, unless the proprietor of the building so insured shall render the insurance void by some act which may be contrary to the rules and regulations of the society.
The effect of a discharge upon the interests of the society is not materially different, whether it be in one way or the other. In both cases the existing liabilities for arrear-ages remain, but none can be subsequently created. And as to the notice, in the one case it is necessary to show that the insurance does not continue, nor the obligation of the society to repair his losses. In the other case notice was not necessary to invalidate the insurance. It was absolutely void by the insurances effected elsewhere, whether the society had notice thereof or not. The insured thereby lost his right to compensation if his buildings had been damaged or destroyed by fire, whether the society had had notice or not prior thereto that insurances had been effected elsewhere. It might have been of advantage to the society, in determining what amount of quotas should be levied to meet contingencies and risks, to have been informed of the insurances made elsewhere during the war; but such notice could not have been given pending the war, and it seems to me could not have been material, as the requisitions on the insured and the contingent liabilities of the society, so far as the buildings in question were concerned, were alike unenforceable; but the evidence shows, I think, that the society was informed of it soon after the war.
*1 am of opinion, therefore, that the insurance being made absolutely void by the declaration of the society, after the insurances of the 14th' of January, 1864, were effected elsewhere, the heirs of Bray B. Walters, the then owners of the property, *547 were not liable, after that period, to contribute quotas to raise a fund to repair losses by fire of the insured except on account of arrearages due from them before they ceased to be insured, and consequently the property being uninsured when it was conveyed to Thomas J. Corprew by deed on the 31st of December, 1870, it was not liable for quotas which accrued subsequently to the 14th of January, 1804. A fortiori it is not liable in the hands of the present owners, James R. and Joseph H. Holt. The property was insured, at the time they purchased. in the Liverpool and London Globe for $15,000; in the Loyd, $10,000; and in the Queen, $5,000; together, $30,000; and they had no knowledge of any insurance in this society, or of any charge upon the property in its favor.
If this were a claim to enforce a penalty for a wrongful act committed by the heirs of B. B. Walters, then it would be a question for a court of equity to determine whether the penalty, under the circumstances of the case, ought to be enforced against them; and if it could, whether it was not a personal liability, which attached to the person of the wrong-doer, and not chargeable on the property in the hands of an innocent purchaser, who had no participation in the wrong. But it is not a suit to enforce a penalty, but the payment of quotas, which by the act of incorporation only the insured could be required to pay. It appears from the testimony of Samuel Pulliam that the society itself, in 1866 and ’67, instead of talking of imposing penalties, had formed the same conclusions I have reached, and was willing to have made an adjustment *on substantially the same terms, upon the payment of all claims which had accrued up to the date of the period when insurance had been effected elsewhere during the war, and to abate all quotas accruing subsequent thereto. It was also willing to abate quotas for 1863 and 1864.
In this case all dues and requisitions had been paid up to the 14th of January, 1864, except the quotas for 1863, which, if there had been a settlement, would have been abated under a resolution of the board of directors. Why should it now be asserted? It is true that a formal notice of withdrawal was not executed; but the society was just as safe from liability of losses as if said formal notice had been executed. Its insurance was void. If the views I have presented are correct, it had no right to claim what it seems it was willing to relinquish — not even the quota of 1863, if the declaration of Walter’s heirs was designed to be a continuation of the original contract; and if not, if it was a new contract, the property was insured elsewhere for $10,000. And by article VTIT, section 14, before recited, the society was absolutely forbid in such case to grant insurance; and if given, it is declared to be void. Moreover, William S. Walters, with whom the last contract of insurance, in 1857, was made, was only one of the nine heirs to whom the property descended from B. B. Walters; and it does not appear that he had authority to execute the contract for the co-heirs. And the declaration is not subscribed by them; and it was necessary that all the parties in interest should have been united in the declaration.
I am of opinion, upon the whole, that there is no error in the decree of the court below dismissing the plaintiff’s bill, and am for affirming the same, with costs.
*Moncure, P., and Staples, J., concurred in the opinion of Anderson, J.
Christian and Burks, J’s, dissented.
Decree affirmed.
FIHJE AJÍ» MAR INK INSURANCM.
*See monosiaphic note on Life and Accident Insurance. McLean v. P. & A. Life Ins. Co., 29 Gratt. 361.
A. Tlie Contract.
I.Fire Insurance.
1. Tn General.
a. Definition.
b. Subject-Matter-~Docation.
c. The Risk.
(1) Military or Usurped Authority
(2) Explosions.
d. The Consideration — Premium.
2. Parties.
a. The Insured.
(1) Corporations.
(2) Insurable Interest.
(a) Definition.
(b) Necessity.
(c) Who Has.
b. Parties by Assignment.
(1) Before Doss.
(2) After Doss.
3. Form of Contracts — Parol Contracts Valid.
4. Prohibitions and Exceptions.
a. Alienation and Incumbrances.
(1) Statements as to Title.
(a) In General.
(b) Substantial Accuracy Sufficient.
(c) Sole and Unconditional Ownership.
(2) Alienation Clause.
(a) Time to Which Clause Relates.
(b) Agreement to Convey.
(c) Change of Interest.
(3) Encumbrance Clause.
(a) Tn General.
(b) Effect Where Clause Omitted.
b. Vacancy — Disuse and Neglect.
(1) In General.
(2) Partial Vacancy Not Fatal.
c. Hazardous Use and Occupation.
(1) Increase of Risk or Hazard.
(2) Keeping Inflammable Materials.
(3) Manufacturing.
d. Other Insurance.
(1) Definition.
(2) Must Be Valid Insurance.
(3) Waiver of Prohibition.
e. Iron Safe Clause — -Warranty.
5. I,oss and Adjustment.
a. Notice and Proof of Doss.
(1) In General.
(2) Time of Furnishing.
(3) Waiver.
*548 (a)’ Acting on Notice.
(b) Failing' to Specify Defects.
(.c) Denial of Liability.
(4) Fraud or False Swearing,
b.Arbitration and Appraisement.
(1) Demand and Notice.
(2) When Contribution Clause Applicable.
6. Recovery after Failure of Adjustment — The
Limitation Clause.
a. Validity.
b. When Limitation Commences.
c. Waiver of Limitation.
d. When Action Is Commenced.
7. Agents.
a. Authority of.
(1) In General.
(2) Agents to Solicit.-
(3) General Agent — Private Instructions Limiting Same.
b. When Knowledge of Agent Binds Company.
8. Rules of Construction.
a. In General.
b. Provision as to Size of Type.
c. Application Construed as Part of Policy.
9. Evidence.
a. Parol Evidence.
(1) When Admissible.
(2) When Not.
b. Burden of Proof.
(1) Chattel Mortgage.
(2) Proofs of Loss.
c. Possession of Policy.
d. Fire Caused by Insured.
10. Foreign’ Insurance Companies — Interstate Commerce.
II. Marine Insurance.
1. Definition.
2. Capture.
3. Deviation.
4. Construction.
B. Pleading and Practice.
1. Suits in Equity.
a. Specific Performance.
b. Subrogation.
2. Actions on Policy.
a. Who May Sue.
b. Where Action Brought.
c. Service of Process.
(1) Domestic Companies,
(2) Foreign Companies.
d. Declaration.
(1) Statutory Form.
(2) Demurrer.
(3) Amendment.
c. Recovery by Motion,
f. Replication.
(1) In General.
(2) Duplicity.
. g. Judgment — Amount of Recovery.
A. THE CONTRACT.
I. Fire Insurance.
1. General.
a. Definition. — “Fire insurance is a contract whereby the insurer undertakes, for a stipulated consideration, to indemnify the assured against all losses, to an extent not exceeding the amount set forth in the contract, in his houses, buildings, furniture, ships in port, or merchandise, by means of accidental fire happening within a specified period. The consideration paid to the insurer for his contract of indemnity is styled a premium, and the instrument that evidences the contract is known as a policy 3 Min. Inst. (2d Ed.) 1168.
lb. Subject-Matter — Location. — Where the policy was on vehicles and harness, plaintiff's own or sold, until removed, “contained in” a building occupied as livery and sale stables, and those destroyed were, at the time of fire, at a repair shop several hundred yards off, it was held that the words “contained in” designate the usual place of deposit of the vehicles when not in use, or being repaired, and cover the destroyed property. Niagara F. Ins. Co. v. Elliott, 85 Va. 962. See also, “Contain,” 7 Am. & Eng. Enc. Law (2nd Ed.) 23.
c. The Risk.
(1) Military or Usurped Authority. — The United States forces, before the ordinance of secession,’anticipating an attack by the ■ Confederate troops, set fire to the navy yard at Portsmouth. This fire was communicated to the insured buildings. Held, That, as the ordinance of secession was not then in force, the burning caused by firing the United States buildings did not bring the loss within the operation of the proviso as to military or usurped power. Portsmouth Ins. Co. v. Reynolds, 32 Gratt. 613.
(2) Explosions. — Where the policy contains a provision stipulating for exemption from liability from explosions, such provision does, not relieve the insurer from losses by fire caused by explosions. Smiley v. Citizens F., etc., Co., 14 W. Va. 33.
d. The Consideration — Premium. — The payment of the premium is of the essence of the contract of insurance. Punctuality in such payment is essential. A failure to pay within the specified time will avoid the policy, unless the company has waived such payment or the delay is due to some omission on its part. Richards on Insurance (2d Ed.) p. 205; So. Mut. Ins. Co. v. Taylor, 33 Gratt. 743; Easley v. Ins. Co., 91 Va. 161. The payment of the first premium is a condition precedent to the liability of an insurance company upon a policy. Oliver v. Ins. Co., 97 Va. 134.
A provision avoiding a policy unless the premium is actually paid is waived by the delivery of the policy without requiring prepayment of the premium. Eagan v. Ins. Co., 10 W. Va. 583. Where the company charges the premium personally to the agent who gives credit to the insured, it amounts to a payment of the premium. Wytheville Ins. Co. v. Teiger, 90 Va. 277. In Croft v. Ins. Co., 40 W. Va. 902, 52 Am. St. Rep. 902, where credit had been given in an oral contract for insurance, the court says: “Insurance can be sold on credit as well as anything else. The agent can give credit. Eagan v. Ins. Co., 10 W. Va. 583, 588; Wood on Insurance, sec. 28; May on Insurance, sec. 360 d; Ins. Co. v. Colt, 20 Wall. 560; Long v. Ins. Co., 137 Pa. St. 335, 21 Am. St. Rep. 883, and note. Prepayment is not necessary to the conclusion of an oral contract. Wood on Insurance, secs. 22 a, 43 b.”
The possession of a policy is sufficient evidence of the payment of the premium, on a demurrer to the evidence by the insurance company. Fidelity, etc., Co. v. Chambers, 93 Va. 138.
Where a policy provides that if a note given for the premium be not paid at maturity such nonpayment shall terminate the insurance and the note shall be considered the premium for the risk thus terminated, the policy is forfeited for nonpayment of the note when due. Muhleman v. Ins. Co., 6 W. Va. 508.
2. Parties.
a. Tlxe Insured.
(1) Corporations. — A corporation may insure *549 its property under its corporate name, and an insurance company, which has accepted premiums from an invalid corporation, cannot avoid the policy by denying the corporate existence of the insured. Bon Aqua Imp. Co. v. Standard F. Ins. Co., 34 W. Va. 764, 12 S. R. Rep. 772.
(2) Insurable Interest.
(a) Definition. — Any interest, however .slight, may be insured, as where A advances money to B in any venture, and by agreement is to be paid out of the proceeds of the property purchased, he has an insurable interest in such property to the extent of his advances. Tilley v. Connecticut Fire Ins. Co., 86 Va. 813. See V. C. 1887, § 2415.
An insurable interest may arise from some liability which is the legal result of obligations assumed. Murdock v. Franklin Ins. Co., 33 W. Va. 407, 10 S. R. Rep. 777.
(b) Necessity .- — It is essential that the insured have an insurable interest in the property. Colby v. Parkersburg Ins. Co., 37 W. Va. 789, 17 S. E. Rep. 303; Sheppard v. Peabody Ins. Co., 21 W. Va. 368; Quarrier v. Peabody Ins. Co., 10 W. Va. 507, 27 Am. Rep. 582.
(c) Who Has — Administrator.—An administrator of an insolvent estate has an insurable interest in the property of the estate. Sheppard v. Peabody Ins. Co., 21 W. Va. 368.
Charterer of Ship.—The charterer of a ship has an insurable interest in such ship. Murdock v. Franklin Ins. Co., 33 W. Va. 407, 10 S. R. Rep. 777.
Grantee.—The grantee in a need of trust has an insurable interest in the property covered by the deed. Tilley v. Connecticut F. Ins. Co., 86 Va. 811.
Lessor.—A lessor has an insurable interest in the furniture of his tenant on the leased premises where there is rent due and unpaid by the tenant. Mutual Fire Ins. Co. v. Ward, 95 Va. 231.
Mortgagor. — A mortgagor may insure for the benefit of the mortgagee. Where it is provided in the covenants of the mortgage that the mortgagor shall insure for the benefit of the mortgagee, and the mortgagor takes out a policy in accordance with such agreement, the mortgagee is entitled to the proceeds in case of loss. Colby v. Parkersburg Ins. Co., 37 W. Va. 789, 17 S. R. Rep. 303.
Occupant. — An occupant in lawful possession of property, with some duty to perform regarding it, or in some measure responsible for its safety, has an insurable interest therein. Sheppard v. Peabody Ins. Co., 21 W. Va. 368; Murdock v. Franklin Ins. Co., 33 W. Va. 407, 10 S. E. Rep. 777.
Remainderman. — A remainderman has an insurable interest in the property to which he is entitled in remainder. Haxall v. Shippen, 10 Reigh 536. It seems that a reversioner has such interest also. Brough v. Higgins, 2 Gratt. 408.
Tenant for Idfe.—A tenant for life may insure the premises in his own name and for his own benefits Brough v. Higgins, 2 Gratt. 410.
The tenant for life and the remainderman or reversioner may take out insurance jointly, and, in case of loss, the insurance money will belong to them in proportion to their interest. Haxall v. Shippen, 10 Reigh 561, 34 Am. Dec. 745. See also Brough v. Higgins, 2 Gratt. 410.
Mr. Barton distinguishes the cases of Haxall v. Shippen (supra) and Brough v. Higgins (supra) as follows: “When property is insured and is destroyed by fire, the insurance money is a mere personal debt to the individual who has the insurable interest, and hence it has been held that while, where a building insured (in which one person was entitled to a life estate and another to the reversion), sustained » partial injury by fire, both of the parlies in interest were entitled to have 1he insurance money applied to the repair of the building, yet when the building was entirely destroyed, the parties liad the like interest in the insurance money that they had in the building; that is, the tenant for life was entitled to the use of it for life, and the reversioner to the principal at the death of the life tenant, and that neither could,, by applying the money to rebuilding the propeity-, defeat the right of the other to have his interest in money.” 2 Bart. Ch. Pr. (2d Ed.) 958.
Vend.ee.—A vendee of property, even where the parties have agreed to rescind the contract of sale, has an insurable interest, if he is still in possession and the agreement is not consummated. MacCutcheon v. Ingraham, 32 W. Va. 378, 9 S. E. Rep. 260.
Vendor.—Where the vendor retains legal title to property until the conditions of the sale are performed, he has an insurable interest although he has given up possession to the vendee. Wheeling F. & M. Ins. Co. v. Morrison, 11 Reigh 354, 36 Am. Dec. 385,
The vendor in a conditional sale is not divested of 1ns insurable interest in the premises until the conditions are performed and the sale becomes absolute, MacCutcheon v. Ingraham, 32 W. Va. 378, 9 S. E. Rep. 260. Where the vendee fails to perform the conditions, the interest of the owner remains unchanged. Wheeling F. & M. Ins. Co. v. Morrison, 11 Reigh 354, 36 Am. Dec. 385.
1). Pai’ties by Assignment.
(1) Before Doss. — Stipulations avoiding the policy on the ground of an assignment before loss without the consent of the insured are valid. Such stipulations, however, may be waived by the insurer. Stolle v. Ætna F. & Ins. Co., 10 W. Va. 546, 36 Am. Dec. 385.
The rule that a policy is not assignable without consent of the insurer applies to absolute assignments. A parol agreement to assign will not avoid the policy. Wheeling F. & M. Ins. Co. v. Morrison, 11 Reigh 354, 36 Am. Dec. 385.
(2) After Loss.-Although the policy provides that it shall be void if assigned without the consent of the insurer, such assignment is valid if made aftei the loss. Nease v. Ætna Ins. Co., 32 W. Va. 283, 9 S. E. Rep. 233; Bentley v. Standard F. Ins. Co., 40 W. Va. 729, 23 S. E. Rep. 584; Stolle v. Ætna F. & M. Ins. Co., 10 W. Va. 546, 27 Am. Rep. 593.
No formal words are necessary to constitute an assignment after loss. An oral assignment is sufficient. Bentley v. Standard F. Ins. Co., 40 W. Va. 729, 23 S. E. Rep. 584.
3. Form of Contract — Pax»ol Contracts Valid.™-A contract of fire insurance need not be in writing, an oral contract is valid. Haskin v. Agricultural F. Ins. Co.. 78 Va. 700; Wooddy v. Old Dominion Ins. Co., 31 Gratt. 362; Croft v. Hanover F. Ins. Co., 40 W. Va. 508, 21 S. E. Rep. 854.
Equity will enforce performance of a contract of insurance, made with an agent having authority to issue policies or to bind the company, in favor of one who has paid the premium. Haden v. F. & M. F. Ins. Co., 80 Va. 683; Haskin v. A. F. Ins. Co., 78 Va. 700; Wooddy v. Old Dominion Ins. Co., 31 Gratt. 362; Croft v. Hanover F. Ins. Co., 40 W. Va. 508, 21 S. Rep. 854.
4. Prohibitions and Exceptions.
a. Alienation and Encumbrance.
(1) Statements as to Title.
(a) In General. — The insured is bound to disclose only such matters as may be inquired about, and *550 not particulars of his title not inquired about, unless such disclosure is required by a condition of the policy. Wytheville Ins. Co. v. Stultz, 87 Va. 629; West Rockingham M. F. Ins. Co. v. Sheets, 26 Gratt. 854.
(lb) Substantial Accuracy Sufficient. — Any material misrepresentation will avoid a policy, but a misrepresentation simply technical, unintentional and immaterial will not have such effect. Haden v. F. & M. F. Association, 80 Va. 683.
(c) Sole and Unconditional Ownership.— The fact that the insured had given a deed of trust on the property to secure a debt, without informing the insurer that he had done so, constitutes no breach of the clause avoiding the policy if the ownership be any other than the sole and unconditional ownership. Manhattan F. Ins. Co. v. Weill, 28 Gratt. 389; Quarrier v. Peabody Ins. Co., 10 W. Va. 507; Wolpert v. N. Assur. Co., 44 W. Va. 734, 29 S. E. Rep. 1024. Nor is the “Sole and Unconditional Ownership” clause broken by the existence of a mortgage on the property at the date of the policy. Morotock Ins. Co. v. Rodefer, 92 Va. 747. Nor by. a lien for the purchase money: Wooddy v. Old Dominion Ins. Co., 31 Gratt. 362. Nor by the contingent right of dower in the wife of the insured, if she was his wife at the date of the deed. Va. F. & M. Ins. Co. v. Kloeber, 31 Gratt. 749.
A statement by the insured that he is owner of the fee simple is substantially complied with where he has a life estate in the property and also an undivided two-thirds interest in the remainder. Haden v. F. & M. Fire Association, 80 Va. 683.
(2) Alienation Clause.
(a) Time to Which. Clause Relates. — Conditions against change in interest, title or possession of the subject of insurance relate-to future changes, and not to any encumbrance subsisting at the date of the policy. Morotock Ins. Co. v. Rodefer, 92 Va. 747.
(b) Agreement to Convey. — An executory contract of sale, where there has been no conveyance or delivery of the property, is not a change in the title so as to avoid the policy. Wheeling F. & M. Ins. Co. v. Morrison, 11 Leigh 354.
(c) Change óf Interest.-r-A transfer by one partner of a firm of his interest in the insured property to the other partner is not such a change in the title or interest of insured as to avoid the policy. Va. M. & F. Ins. Co. v. Vaughan, 88 Va. 832.
Nor does the death of the insured and descent of title upon his heirs constitute a change of interest, alienation, or transfer within'the meaning of a prohibitory clause in the policy. Ga. Home Ins. Co. v. Kinnier, 28 Gratt. 88.
Nor is a change of receivers a breach of this condition, where the insurance is obtained by a receiver as such. Ga. Home Ins. Co. v. Bartlett, 91 Va. 305.
Nor is a deed of trust given as security for a debt a breach of conditions against change of title or interest. Quarrier v. Peabody Ins., Co., 10 Wa. Va. 507, 27 Am. Rep. 582.
(3) Encumbrance Clause.
(a)* In General. — A provision avoiding the policy if the property be or become encumbered without consent of the company is valid, and such encumbrance, unknown to the company, avoids the policy. Sulphur Mines Co. v. Phenix Ins. Co., 94 Va. 355.
The condition against encumbrances is held to apply only to encumbrances created by or with the consent of the insured and does not apply to a judgment recovered in invitum. Gerling v. Agricultural Ins. Co., 39 W. Va. 689, 20 S. E. Rep. 691.
(b) Where Clause Omitted. — Where the policy contains no such provision against encumbrances existing or future, neither an encumbrance at the time of the policy and undisclosed, where no inquiries were made as to encumbrances on the application, nor a subsequent encumbrance without consent will affect the insurance. West Rockingham Mut. F. Ins. Co. v. Sheets, 26 Gratt. 858.
b. Vacancy — Disuse and Neglect.
(1) In General. — A description of the premises in the policy as a “building occupied as a hardware store and dwelling” is no warranty within itself that the premises shall continue to be so occupied during the risk, and the policy is not rendered void by a subsequent vacancy. Bryan v. Peabody Ins. Co., 8 W. Va. 605.
Nontenancy alone will not avoid a policy under a clause prohibiting increase of risk or hazard. Ga. Home Ins. Co. v. Kinnier, 28 Gratt. 88.
(2) Partial Vacancy Not Fatal. — Where the policy covered a two story building, the vacancy of the second story did not avoid the policy. Bryan v. Peabody Ins. Co., 8 W. Va. 605.
Where eight double tenement houses were insured under a policy containing a clause forbidding the premises to be left unoccupied, the policy was forfeited as to each house vacant at the time of the fire. Connecticut F. Ins. Co. v. Tilley, 88 Va. 1024. See also Watertown F. Ins. Co. v. Cherry, 84 Va. 72.
c. Hazardous Use and Occupation.
(1) Increase of Risk or Hazard.' — Vacancy or nontenancy will not of itself constitute a breach of the clause prohibiting increase of risk or hazard. Ga. Home Ins. Co. v. Kinnier, 28 Gratt. 88.
(2) Keeping* Inflammable Materials.— Where a policy was issued on materials for manufacturing barrels, in the absence of proof, benzine was held not to be included, and the insurance com-* pany could not be presumed to have knowledge that it was used in painting the barrels. McFarland v. Peabody Ins. Co., 6 W. Va. 425.
(3) Manufacturing. — -A policy insuring a tin shop, although it contains a provision against manufacturing, allows making tin cans and such other work usually done in such shops. Va. F. & M. Ins. Co. v. Thomas, 90 Va. 658.
d. Other Insurance.
(1) Definition. — Other insurance may be defined to be‘ “additional and valid insurance, prior or subsequent, upon the same subject, risk and interest effected by the same insured, or for his benefit, and with his knowledge and consent.” Lacy, J., in Home Ins. Co. v. Gwathmey, 82 Va. 823.
(2) Must Be Valid Insurance. — In order to avoid a policy on account of subsequent insurance against an express condition therein, it must appear that such other insurance is valid- and can be •enforced. If it cannot be enforced, it is no breach of the condition of the prior policy. Sutherland v. O. D. Ins. Co., 31 Gratt. 176; Woolpert v. Franklin Ins. Co., 42 W. Va. 658, 26 S. E. Rep. 521; Woolpert v. Northern Assur. Co., 44 W. Va. 734, 29 S. E. Rep. 1024.
(3) Waiver of Prohibition. — The adjustment of a loss by an insurer, with full knowledge of all the facts, operates as a waiver of a condition in the policy against other insurance. Levy v. Peabody Ins. Co., 10 W. Va. 560, 27 Am. Rep. 598.
e. Iron Safe Clause — Warranty,—Where in his application’ for a policy, the insured answered in *551 the affirmative to the question whether he kept his , account books in an iron safe, this was held to constitute a warranty. Va. F. & M. Ins. Co. v. Morgan, 90 Va. 290.
5. Los» and. Adjustment.
a.Notice and Proof of Loss.
(X) In General. — Where no policy has been issued, t1ie provisions of the policies usually written by the insurer with regard to notices and proofs of loss need not be complied with. Due diligence in giving notice of the loss of the building under all the circumstances is all that can be required. Wooddy v. Old Dominion Ins. Co., 31 Gratt. 362.
A substantial compliance with the requirements of the policy is all that is required in a proof of loss. Ga. Home Ins. Co. v. Goode, 95 Va. 751; Home Ins. Co. v. Cohen, 20 Gratt. 312.
(3) Time of Furnishing. — If no forfeiture of the policy is provided for in case of failure to furnish proofs of loss within the time prescribed, such failure merely postpones the time of payment to the specified time after they are furnished. Rheims v. Standard F. Ins. Co., 39 W. Va. 672, 20 S. E. Rep. 670.
When the policy provides that “in case" of loss the assured shall give immediate notice thereof,” due diligence under all the circumstances is all that is required. Wooddy v. Old Dominion Ins. Co., 31 Gratt. 362.
A condition in a policy requiring immediate notice of loss and that proofs thereof be furnished within a limited time may be waived by the insurer. Many acts and circumstances may constitute such waiver. Ga. Home Ins. Co. v. Kinnier, 28 Gratt. 88; Rheims v. Standard F. Ins. Co., 39 W. Va. 672, 20 S. R. Rep. 670.
By statute in Virginia, blanks for proof of loss must be furnished within ten days after a written application therefor. If made by mail, letter must be registered. If not so furnished, proofs are considered waived. Acts 1889-’90, p. 66.
<3) Waiver.
(a) Acting on Notice. — Where the notice is acted on by the insurer, all defects in its form or contents are waived. West Rockingham Mut. F. Ins. Co. v. Sheets, 26 Gratt. 854.
When the insurance company does not point out and object to defects or informalities in the proofs of loss, such failure constitutes a waiver of the defects. Morotock Ins. Co. v. Cheek, 93 Va. 8; Va. F. & M. Ins. Co. v. Goode, 95 Va. 762; Rheims v. Standard F. Ins. Co., 39 W. Va. 672, 20 S. R. Rep. 670.
When the company by its acts, or through its agent, induces failure or delay in making or perfecting the proofs, it is held to have waived such defect. Ga. Home Ins. Co. v. Kinnier, 28 Gratt. 88; Peninsular Rand Transp., etc., Co. v. Franklin Ins. Co., 35 W. Va. 666, 14 S. R. Rep. 237.
(b) Failing to Specify Defects. — Where the insured, in sending proofs, inquires whether further statements are required and the company does not specify the defects or informalities in the proofs of loss, it is held to have waived them. Home Ins. Co. v. Cohen, 20 Gratt. 312; Mason v. Citizens’, etc., Ins. Co., 10 W. Va. 572.
(e) Denial of Liability. — A denial of liability by the insurance company on the ground that the policy was not in force at the time of loss, or that it had been forfeited, is a waiver not only of defects of time but of any proofs whatever. Va. F. & M. Ins. Co. v. Goode, 95 Va. 762; Portsmouth Ins. Co. v. Reynolds, 32 Gratt. 613; West Rockingham Mut. F. Ins. Co. v. Sheets, 26 Gratt. 854; Sheppard v. Peabody Ins. Co., 21 W. Va. 368; Deitz v. Providence, etc., Ins. Co., 33 W. Va. 526, 11 S. E. Rep. 50; Gerling v. Agricultural Ins. Co., 39 W. Va. 689, 20 S. E. Rep. 691.
(4) Fraud ox* False Swearing. — Fraud or false swearing as to one part of the subject insured by the policy is held to be a forfeiture of the whole policy, and the insured cannot recover for any part of his loss. Moore v. Va. F. & M. Ins. Co., 28 Gratt. 508; Moore v. Fireman’s F. Ins. Co., 28 Gratt. 524. A material and fraudulent alteration of the invoices avoids the policy. Va. F. & M. Ins. Co. v. Vaughan, 88 Va. 832.
b.Arbitration and Appraisement.
(1) Demand and Notice. — The declaration alleged that the loss exceeded the insurance, and no demand for an award by the defendant was alleged. Held, that the provision that no suit is maintainable until after an award was waived. Tilley v. Connecticut F. Ins. Co., 86 Va. 811.
(3) When Contribution Clause Applicable.' — -The contribution or pro rata clause does not apply unless the concurrent insurance is upon the same interest in the property, as well as upon the same property. Hence, the insurer of a warehouseman is not liable for loss to goods in storage where the policy limits liability to loss affecting insured’s interest in the goods, and provides that goods on storage be insured separately, and tile depositors of such goods have insured them in a different company. Home Ins. Co. v. Gwathmey, 82 Va. 923.
6, Recovery after Failure of Adjustment — Tlie Limitation Clause.
a. Validity.—A condition in a policy that suit shall not be brought except within a period less than that fixed by the statute of limitations is valid. Va. F. & M. Ins. Co. v. Aiken, 82 Va. 424; McFarland v. Peabody Ins. Co., 6 W. Va. 425.
b. When Limitation Commences. — An insurance policy contained a provision that no action should be sustained thereon unless brought within six months after the loss should occur, and another stipulation that the loss or damage should be paid to th<f assured sixty days after the receipt by the company of satisfactory proof of loss. Held, that the statute commenced to run when the loss occurred and not sixty days thereafter. Va. F. & M. Ins. Co. v. Wells, 83 Va. 736. See also, McFarland v. Peabody Ins. Co., 6 W. Va. 425.
In Barber v. F. & M. Ins. Co. of Wheeling, 16 W. Va. 658, 37 Am. Rep. 800, where the policy provided that no action should be sustained thereon unless commenced within six months after the loss should occur, and also that no action should be maintained until arbitrators had fixed the amount of the loss, it was held that the action could be commenced within six months after the arbitrators had fixed the amount of the loss, although more than six months after the loss occurred. See also, Murdock v. Franklin Ins. Co., 33 W. Va. 407, 10 S. E. Rep. 777.
c. Waiver of Liinitation. — The insurer may waive the limitation by not relying upon it after the time has expired. Va. F. & M. Ins. Co. v. Aiken, 82 Va. 424.
«1. Wlien Action Is Commenced. — Where service of summons on defendant’s agent had been made within ten days of return day, and suit remanded to rules to be properly matured, and an alias summons had been issued and duly served, it was held, that the commencement of suit was the issuance of the original summons and saved the suit from being *552 barred by the statute of limitations. Va. F. & M. Ins. Co. v. Vaughan, 88 Va. 832.
A provision in a policy that no action for loss or damage shall be sustainable unless the same is brought within six months after the loss or damage shall occur, is valid. The mere pendency of negotiations between the parties, or the fact that occasional interviews are had between them in regard to the adjustment or settlement of a loss, will not, of itself, operate as a waiver of the above provision, or be an equitable estop-pel. McFarland v. Peabody Ins. Co., 6 W. Va. 425.
7, Agents,
a. Authority of.
(X) In General. — When an insurance company supplies one with all needful blanks, responds to his acts, approves of his permits to remove insured property, and pays the rent of his office, it is bound by his acts as its agent. Hardin v. A. Ins. Co., 90 Va. 413.
(2) Agrents to Solicit. — An agent whose powers are limited by the charter, constitution or by-laws of the company, to receiving and forwarding applications for insurance, together with the premiums to the company for acceptance or rejection, can make no contract of insurance binding the company. Haden v. F. & M. F. Association, 80 Va. 683.
(3) General Agrent — Private Instructions Limiting Same. — If at the time of issuing a policy, I had been authorized by the insurance company to receive and accept proposals for risks, subject to their approval and ratification, to issue and deliver policies and renew the same, and receive premiums therefor, and had been supplied with blanks signed by the president, to be filled and countersigned by him, this constituted I the general agent of the company, and the company is bound by all his acts as such within the scope of his authority, so long as it existed, notwithstanding any private instructions which he may have received limiting that authority, of which the assured had no notice. Ga. Home Ins. Co. v. Kinnier, 28 Gratt. 88; Coles v. Jefferson Ins. Co., 41 W. Va. 261, 23 S. E. Rep. 732. See also, Goode v. Ga. Home Ins. Co., 92 Va. 392, 53 Am. St. Rep. 817.
lb. Wheu Knowledge of Agent Binds Company. — Where the agent knew at the time of issuing the policy that the building was on leased premises, such knowledge is imputed to the company, and they, having received the premiums on the policy, are estopped to deny its validity. Manhattan F. Ins. Co. v. Weill, 28 Gratt. 389.
Where the company’s agent inspected the property, was as well informed as to its cost as the insured, and concurred in her estimate and inserted it in the application, the company is estopped to set up that the insured exaggerated the cost of the property. Va. F. & M. Ins. Co. v. Saunders, 86 Va. 969.
Where an incumbrance on the property was mentioned to the agent of an insurance company at the time of the application, and he informed the insured that it was too small to note in the application, the company is estopped to set up such encumbrance as a defence to an action on the policy. Ga. Home Ins. Co. v. Goode, 95 Va. 751.
Facts relating to the risk, communicated to a general agent of an insurance company before or at the time of issuing the policy, bind the company, whether communicated to it by such agent or not. Mutual F. Ins. Co. v. Ward, 95 Va. 231; Va. F. & M. Ins. Co. v. Goode, 95 Va. 762.
8. Rules of Construction..
a. In General. — “The principles of interpretation applicable to contracts of insurance are the same as those which obtain in the case of other contracts. The same rule of construction which applies to other instruments applies also to these. They are to be construed according to the sense and meaning of the terms used, and if these are clear and unambiguous, parol evidence will not be admitted to contradict, vary or to explain them.” Lacy, J., in Home Ins. Co. v. Gwathmey, 82 Va. 924; Merchants Ins. Co. v. Edmond, Davenport & Co., 17 Gratt. 138.
“In a case where it can be fairly claimed that two constructions can be placed upon the language used in the policy, it is now well settled that the one is to be adopted which is most favorable to the insured; and in a case of doubt as to the meaning of terms employed by an insurance company, they are to be construed most strongly against the insurer.” Lacy, J., in U. S. Mutual Accident Ass’n v. Newman, 84 Va. 52. In support of this rule, see Ga. Home Ins. Co. v. Bartlett, 91 Va. 305; Va. F. & M. Ins. Co. v. Thomas, 90 Va. 658; Mutual Assur. Society v. S. U. & Nat. Ins. Co., 84 Va. 116; Watertown F. Ins. Co. v. Cherry, 84 Va. 72; Lynchburg F. Ins. Co. v. West, 76 Va. 575; Ga. Home Ins. Co. v. Kinnier, 28 Gratt. 88. Parties are not held to have entered into warranties unless they clearly so intended. Morotock Ins. Co. v. Fostoria, etc., Co., 94 Va. 361.
1). Provision as to Size of Type. — Section 3252 of the Code of Virginia, requiring that conditions and restrictive provisions of insurance policies must be written or printed in type of a prescribed size, should be liberally construed. The whole provision relied on must be in writing or printed in type of the prescribed size, or else < it is not available as a defence to an action on the policy. Nat. Life Assoc. v. Berkeley, 97 Va. 571.
c. Apx>lication Construed as Part of Policy. — The application to an insurance company for insurance upon a building, which is granted and a policy issued based upon the application, is a part of the policy. So. Mut. Ins. Co. v. Yates, 28 Gratt. 585.
0. Evidence.
a. Parol Evidence.
(1) When Admissible. — In Lynchburg F. Ins. Co. v. West, 76 Va. 575, Staples, J., says that parol evidence is admissible “in those cases in which the assured is misled by assurances, or declarations of. the assurer, or his agent, or where the insurer seeks to take advantage of a forfeiture of his own creation, or where the insured has given a correct description of the property, and that description has not been followed by the insurer or his agents in preparing the policy, or where the parties stand upon unequal grounds, and one of them uses his superior knowledge, or his influence, to mislead the other as to the true import of the contract. In such cases the oral evidence is not offered to contradict the writing, but to show that the representation, as it is written, ought not to be used against the party upon the ground of an equitable estoppel.” The same rule was laid down in Va. F. & M. Ins. Co. v. Goode, 95 Va. 762.
In Farmers, etc., Ins. Assoc. v. Williams, 95 Va. 248, parol evidence was admitted to show the circumstances under which a written application for insurance was made. • .
Parol evidence is admissible to prove that conditions inserted in the receipts were in violation of an agreement between the agent of the insured and the secretary of the company, and that by that agreement the forfeiture of the policy, if it had been forfeited, was unconditionally waived. McLean v. P. & A. Life Ins. Co., 29 Gratt. 361.
*553 Parol evidence, not tending to vary the contract of the parties, but in confirmation of such contract, is admissible. So. Mut. Ins. Co. v. Trear, 29 Gratt. 255.
(2) When Not. — After the answers to the questions are written in the application, and it is signed by the applicant, parol evidence is "not admissible to prove that he did not read the application, or that no question was asked him as to the existence of encumbrances. Va. F. & M. Ins. Co. v. Morgan, 90 Va. 290; So. Mut. Ins. Co. v. Yates, 28 Gratt. 585.
h. Burden, of Proof.
(1) Chattel Mortgage. — Where the policy contains a clause avoiding it if there be a chattel mortgage on the personal property insured, the existence of such chattel mortgage is a matter of defence which it is encumbent upon the company to prove. Morotock Ins. Co. v. Rodefer, 92 Va. 747.
(2) Proofs of Loss. — The burden of proving compliance with the requirements of a policy as to proofs of loss, or the waiver of such compliance by the company, is on the insured. Flanaghan v. Phenix Ins. Co., 42 W. Va. 426, 26 S. E. Rep. 513; Adkins v. Globe F. Ins. Co., 45 W. Va. 384, 32 S. E. Rep. 194.
c. Possession of Policy. — The possession of a policy is sufficient evidence of the payment of the premium, on a demurrer to the evidence by the insurance company. Fidelity, etc, Co. v. Chambers, 93 Va. 138.
d. Fire Caused by Insured. — Where the de-fence to an action on a policy is that the fire was caused by the insured, it is not necessary to prove beyond a reasonable doubt that the plaintiff intentionally and fraudulently set the property on fire. A preponderance of evidence to that effect is sufficient. Simmons v. Ins. Co., 8 W. Va. 474.
10. Foi*eign Insurance Companies — Interstate Commerce. — The legislature of a state has authority to prescribe such conditions and restrictions upon foreign insurance companies doing business within the state as it may see fit to impose, since such legislation does not pertain to matters of interstate commerce, nor to the privileges or immunities of citizens in the several states. Liverpool, etc., v. Oliver, 10 Wall. (U. S.) 566; Paul v. Virginia, 8 Wall. 168; Ducat v. Chicago, 10 Wall. (U. S.) 410; Home Ins. Co. v. Augusta, 93 U. S. 116.
11. Marine Insurance.
1. r>eiinition.“-“Marine insurance is a contract, whereby one party, for a stipulated premium, undertakes to indemnify the other against certain perils or sea risks, to which his ship, freight and cargo, or some of them, may be exposed, during a certain voyage, or a fixed period of time.” 3 Min. Inst. (2d Ed.) 1037.
2. Capture. — The M. Co. issues to 1$. a policy of insurance in the usual form and at the usual rates, dated December 24, 1860, on a cargo of coffee to be shipped on board the S. from Rio to Richmond or some other Atlantic port in the United States. The cargo is shipped on the 10th of May, and in July is seized or captured some miles outside the capes of Virginia by a United States vessel. The owners of the ship, the insurers and insured are all citizens of Virginia. The policy is unaffected by the public events that had occurred; the capture and condemnation was as of enemy’s property; and the insurer is liable upon the policy. Merchants Ins. Co. v. Edmond, Davenport & Co., 17 Gratt. 138.
3. Deviation. — -A marine insurance, “at and from Norfolk to Curracoa, with liberty of going to any other island in the West Indies, or any one port on the Spanish Main, and at and from thence back to Richmond,” must be understood as an insurance, “at and from Norfolk to Curracoa, in the first place, with liberty of going from Curracoa to any other island.” If, therefore, the vessel put into the island of St. Thomas, and thence return to Norfolk, without ever going to Curracoa, it is a deviation from the voyage, and, there being no proof that such deviation was occasioned by stress of weather, or other unavoidable accident, the person insured is entitled to no return of premium, such being the terms of the policy. Marine Ins. Co. v. Stras, 1 Munf. 408.
4. Construction. — Contracts of insurance are to be constructed accurately, and neither liberally nor severely, and without favor to either party. Such contracts are to be considered and construed as a whole; and particular clauses or passages are not to be wrested from their context so as to destroy the unity of the contract and create conflict where there should be agreement; but one part is to be elucidated by the other, so as to reconcile them, if practicable, to one common intent or design, present to the minds of the contracting parties. Merchants Ins. Co. v. Edmond, Davenport & Co., 17 Gratt. 138.
But where there is doubt as to the meaning of the terms employed by an insurance company, they are to be construed most strongly against the insurer. In Miller v. Ins. Co., 12 W. Va. 116, the court says: “No rule, in the interpretation of a policy, is more fully established, or more imperative and controlling, than that which declares, that in all cases it must be liberally construed in favor of the insured, so as not to defeat without a plain necessity his claim to the indemnity, which in making the insurance it was his object to secure. When the words are, without violence, susceptible of two interpretations, that which will sustain his claim and cover the loss, must in preference be adopted. While courts will extend all reasonable protection to insurers, by allowing them to hedge themselves about with conditions intended to guard against fraud, carelessness, want of interest, and the like, they will nevertheless enforce the salutary rule of the condition is theirs, and it is therein in construction, that as the language of their power to provide for every proper case, it is to be construed most favorably to tbe insured.”
B. PLEADING AND PRACTICE.
1. Suits in Equity.
a. Specific Performance. — -Where an agree ment to insure has been made with an agent having authority to issue policies or to bind the company 1o issue policies, and the premium has been paid, and a loss occurs before the policy is written, the remedy is in equity. A court of equity will decree specific performance of such contract by directing the issuance of the policy and the payment of the loss. Haden v. F. & M. F. Association, 80 Va. 683; Wooddy v. Old Dominion Ins. Co., 31 Gratt. 362.
lb. SulM*og:ation. — Where the insurer has paid a loss to the mortgagee covering only a pari of the mortgage debt, he acquires no right to have from the mortgagee the evidence of the debt to an amount equal to the loss paid by him. The debt must be paid in full before he can take from the mortgagee any part of the debt by subrogation. Phenix Ins. Co. v. First Nat. Bank, 85 Va. 765.
2. Actions on Policy.
a. Who May Sue — Administrators.—The administratrix may sue on a policy insuring the deceased and his legal representatives. Ga. Home Ins. Co. v. Funnier, 28 Gratt. 88.
*554 Agrents. — Agents or bailees obtaining insurance in their own names, for the benefit of others, on property in their care or custody or the subject of the agency, or having an insurable interest in such property, may sue in their own 'names. Murdock v. Franklin Ins. Co., 33 W. Va. 407, 10 S. E. Rep. 777; Deitz v. Providence, etc., Ins. Co., 31 W. Va. 851, 8 S. E. Rep. 616.
Where an insurance contract not under seal is made by an agent in his own name for an undisclosed principal, either the agent or the undisclosed principal may sue upon it. Murdock v. Franklin Ins. Co., 33 W. Va. 407, 10 S. E. Rep. 777; Deitz v. Providence, etc., Ins. Co., 31 W. Va. 851, 8 S. E. Rep. 616.
Assignee. — Where the insured assigned to B before loss with consent of the insurer, and after loss B assigned to L,'it was held that the legal title was in B, and that he might sue in his own name notwithstanding the assignment. Bentley v. Standard F. Ins. Co., 40 W. Va. 729, 23 S. E. Rep. 584.
Mortgagee.—Under Va. Code 1887, § 2415, providing that any person having an interest in the property insured, though not a party to the policy, may sue in his own name to the extent of his loss, a mortgagee, whose interest extends to the whole loss, may sue. Tilley v. Connecticut F. Ins. Co., 86 Va. 811.
b. Where Action. Brought.—In Virginia an action may be brought to recover a loss under a policy of insurance in any county wherein the property insured was situated. , V. C. 1887, § 3214; Wytheville Ins. Co. v. Stultz, 87 Va. 629.
Where the purpose of the action is to subject the deposit required by law to be made by foreign insurance companies within the state' of Virginia for the protection of the insured, the policy holder may sue in the circuit court of the city of Richmond. Universal Life Ins. Co. v. Cogbill, 30 Gratt, 72.
In West Virginia the action may be brought in any county where a non-resident company does business, or in which it has property or debts due it, or in which the cause of action or part thereof arose. Carson v. Phœnix Ins. Co., 41 W. Va. 136, 23 S. E. Rep. 552; Harvey v. Parkersburg Ins. Co., 37 W. Va. 272, 16 S. E. Rep. 580.
c. Service of Process.
(1) Domestic Companies. — The same rules which govern the service of process on other corporations -apply to insurance companies. , For service of process on corporations, see Va. Code 1887, section 3225, Lile’s Notes'to 1 Minor’s Inst., p. 318 et seq. It is to be noted, however, that the provisions of section 3214 that an action to recover a loss under a policy of insurance may be brought in any county or corporation wherein the property was situated, or the person whose life was insured, resided, at the date of the policy, are not embraced in section 3215. Hence, these provisions are not governed by the inhibitions of section 3220, and process may, therefore, issue to some other county or corporation than that in which the action was brought, and, where there is no agent residing in the county, the process may be by publication. See 2 Bart. Law Pr. (2nd Ed.) 1298. In Wytheville Ins. Co. v. Stultz, 87 Va. 629, where there was no agent in the county in which the action was brought, it was held that service by publication was proper, although the company was doing business both in banking and insurance, and another kind of service is provided for in an action against banks.
(?) Foreign Companies. — In Virginia it is provided by statute that every foreign insurance company doing business in the state shall appoint an agent in the city of Richmond upon whom process, may be served, and that in case of his death or inability to act, process may be served upon the Auditor of Public Accounts. V. C. §§ 1266, 1267, as amended by Acts 1889-90, p. 9. Continental Ins. Co. v. Kasey, 27 Gratt. 216.
In West Virginia there is a similar statute providing for an agent upon whom process may be served. Code W. Va. chap. 124, § 9.
Where a company withdrew irom a state and revoked its appointment of an agent, but afterwards re-entered the state and appointed another agent under a new law, it was held that the new law referred to past as' well as to future contracts, and service on the new agent in an action on a contract made when the company was previously doing business in the state, was sustained. Connecticut Mut. L. Ins. Co. v. Duerson, 28 Gratt. 630.
d. Declaration.
(X) Statutory Form. — In Virginia it has been provided by statute that if the plaintiff file the policy or a sworn copy thereof with his declaration, it shall not be necessary, in respect to the conditions and provisos of such policy, to set forth in the declaration every such condition and proviso, nor to allege observance thereof or compliance therewith in particulars; but, in respect to such conditions and provisos, it shall be sufficient to refer to the policy or copy and allege, in general terms, the performance of all its conditions and the violation of none of its prohibitions. V. C. 1887, § 3251. By Acts 1895-96, p. 707, the pleadings are to be filed and the proceedings matured as in ordinary actions.
A declaration, from which it is evident that the pleader intended to proceed under this statute, is good, although it largely follows the form of an ordinary declaration in debt. Va. F. & M. Ins. Co. v. Saunders, 84 Va. 210; Travis v. Peabody Ins. Co., 28 W. Va. 583.
The performance of conditions may be alleged in general terms and it is not necessary to aver an award, although the policy provides that no suit shall be brought till after an award. Tilley v. Ins. Co., 86 Va. 811. For form of declaration on an insurance policy, see 1 Bart. Law Pr. (2nd Ed.) 406; 4 Min. Inst. (3d Ed.), 1684.
In West Virginia a brief form for actions on insurance policies is provided by statute. Code W. Va. chap. 125, § 61.
Where the declaration is drawn under such a statute and additional statements are ordered by the court, such statements are to be regarded as informal pleadings. Rheims v. Standard F. Ins. Co., 39 W. Va. 672, 20 S. E. Rep. 670.
In 'assumpsit the common counts, or other counts proper in that action, may be joined with a count in the statutory form. Bentley v. Standard F. Jns. Co., 40 W. Va. 729, 23 S. E. Rep. 584.
In an action of assumpsit on a policy, it is necessary for the plaintiff to allege an interest in the property insured. Quarrier v. Peabody Ins. Co., 10 Va. 507.
(2) Demurrer.—In West Virginia the plaintiff may be required to file, in addition to his declaration, a sworn statement of the facts which he expects to prove, and, in an insurance case* the legal sufficiency of the facts thus presented was held to be properly raised by a demurrer. Deitz v. Providence, etc., Ins. Co., 31 W. Va. 851, 8 S. E. Rep. 616.
(3) Amendment. — In an action on a policy for loss by fire claiming a certain sum as damages, or for *555 loss to certain property, an amended declaration may be filed claiming larger damages, or on additional property, under the same policy, by the same fire. Bentley v. Standard F. Ins. Co., 40 W. Va. 729, 23 S. E. Rep. 584. As to amendment of declaration where one of the conditions of the policy was omitted, see N. Y. Life Ins. Co. v. Hendren, 24 Gratt. 536.
e. Recovery Ivy Motion. — Under Va. Code 1887, section 3211, a motion may be maintained for a judgment for money on an insurance policy, and the notice takes the place of both the writ and declaration. Grubbs v. Nat., etc., Ins. Co., 94 Va. 589; Morotock Ins. Co. v. Pankey, 91 Va. 259; Union Central Life Ins. Co. v. Pollard, 94 Va. 146. On such motion the defendant, where he has appeared and pleaded, cannot move to dismiss. Morotock Ins. Co. v. Pankey, 91 Va. 259.
f. Replication.
(1) In General. — Where a common-law replication introduces new matter it should conclude with a verification and not to the country. Va. F. & M. Ins. Co. v. Saunders, 84 Va. 210.
(2) Duplicity. — Where the plea alleged misrepresentation in the application as to the value of the insured property, it was held that a replication that the agent of the insurer inspected the property and inserted the valuation in the policy is not double, as being both by way of estoppel and in confession and avoidance. Va. F. & M. Ins. Co. v. Saunders, 86 Va. 969.
g. Jnclgment — Amount of Recovery. — In an action on a fire insurance policy, where there has been no fraud, the plaintiff is not limited in recovery by the amount of loss specified in the proofs of loss. Bentley v. Standard F. Ins. Co., 40 W. Va. 739, 23 S. E. Rep. 584.